PEMBERTON LUMBER & MILLWORK INDUSTRIES, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF, v. MAPLE SHADE DEVELOPMENT CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided June 8, 1954.

*Mr. Neil F. Deighan, Jr.,* for plaintiff (*Messrs. Evoy, Feinberg and Deighan,* attorneys).

*Mr. Lawrence N. Park,* for receiver, J. Norman Brierley, Esq.

*Mr. C. Zachary Seltzer* and *Mr. Samuel Gelfand,* for defendant C. Fred Vogdes, Inc.

*Mr. Albert B. Melnik,* for defendant Peirce-Phelps, Inc.

*Mr. Josiah E. DuBois, Jr.,* for defendant William H. Pearce & Co.

*Mr. Louis B. LeDuc,* for defendant Stanley Frankel.

*Mr. Willard F. Lippincott* and *Mr. Vernon Fisler,* for defendant Augustino Peraino.

*Mr. Abraham Greenberg,* for defendants Maurice D. Sady and B. DiMedio & Sons, Inc.

HANEMAN, J. S. C. This matter concerns itself with an order to show cause why certain funds held by the Tri-County Search and Abstract Company, hereafter referred to as Tri-County, should not be (1) declared to be held in trust for the benefit of the petitioners, and (2) immediately paid to the said several petitioners. The facts in connection herewith are as follows:

The defendant Maple Shade Development Co., Inc., a New Jersey corporation, hereafter referred to as Maple Shade, developed a tract of land and constructed homes thereon in Maple Shade, New Jersey.

On July 21, 1952 Maple Shade executed a construction mortgage in the sum of $196,333 to the South Jersey Mortgage Co., hereafter referred to as South Jersey, which mortgage was recorded on July 28, 1952. On November 21, 1952 Maple Shade executed a mortgage to Augustino Peraino in the sum of $10,000 covering a portion of the parcels of real estate here involved, which said mortgage was recorded on November 25, 1952. On May 1, 1953 Maple Shade executed a mortgage to Stanley Frankel in the sum of $36,780 covering all or a part of the premises here involved, which said mortgage was recorded on June 3, 1953.

On 21 of these homes, located on Buttonwood Avenue, possession was granted to purchasers by virtue of agreements of sale. Each of said agreements was on a specially printed form and provided, in part, as follows:

"The Seller agrees to deliver a Special Warranty Deed covering said premises. Title shall be good and marketable, such as will be insured at regular rates by a reputable title company, designated by Seller, free and clear of all liens and encumbrances, except restrictions, easements or encumbrances of record and such state of facts as an accurate survey would disclose, restrictions required to be placed by the Federal Housing Administration and/or Veterans Administration, if any, and ordinances affecting the use of and improvement to said premises."

Over a period of approximately five weeks, from July 20, 1953 to on or about August 31, 1953, the 21 purchasers made settlement at the office of Tri-County, at which time they executed individual mortgages to the South Jersey, the proceeds from which were to be used, in part, to obtain a discharge of the South Jersey construction mortgage. These latter mortgages were recorded and most of them have now been assigned to the Bowery Savings Bank of New York. Deeds were delivered to the respective purchasers for their particular properties.

At these settlements, reports of title, made by the Chelsea Title & Guaranty Co., designated "Settlement Certificate," were issued to South Jersey or its nominee. These certificates exhibited the title to be free and clear of all encumbrances, and that the individual mortgages constituted a first lien on the premises. The above referred to report of title exhibited that there were on record a number of mechanics' notices of intention, as well as the three above referred to mortgages which affected the individual premises here involved. All of these were, as above noted, marked "Removed," including the mortgage from Maple Shade to Augustino Peraino and the mortgage from Maple Shade to Stanley Frankel.

The monies deposited by the individual purchasers came, in a large part, from the funds each one of them received

from South Jersey, and in a lesser part from additional funds deposited by the purchasers themselves.

At the time of settlement there were made up individual settlement statements, all of which were, to all intents and purposes, identical. These settlement statements were in the customary and normal form, exhibiting the purchase price for each property and the charges as against the purchaser, as well as a statement of the balance due the seller. There appeared various items listing persons to whom all or a part of the sums due the seller were to be paid.

At the bottom of the settlement sheet appears the following legend:

"The Lawyers Title Insurance Corporation is hereby authorized to record all papers prior to distribution of funds. Examined and Approved by:

(s) W. G. Ridgway,                    (s) Dennis F. Casey,
           Seller.                              Purchaser.
                                       (s) Frances E. Casey."

The items so listed to be paid out of the funds coming to the seller, and with which we are now concerned, were sums to be paid (1) to the construction mortgagee; (2) to persons who had filed mechanics' notices of intention, and (3) to persons who held no liens on the premises. It is to be noted in this connection that although the report of title exhibited that the Peraino and Frankel mortgages were liens upon the premises, no provision was made for the payment of the same in the individual settlements.

Prior to said settlements South Jersey mailed to Tri-County, in each instance, an instrument entitled "Instructions for Settlement" which, in part, reads as follows:

"NOTE: If papers and marked up Report of Title cannot be returned today, return check until they are available."

"Remove a'l exceptions except * * *. Return to South Jersey Mortgage Co. * * * both copies of settlement cert. marked up."

Each of the said purchasers were advised by Thomas J. Vogdes, agent for Maple Shade, in the presence and in the hearing of an agent of Tri-County, that the money de-

posited by them would not be distributed until such time as all titles were in the condition required under the agreements of sale. George H. Barbour, manager of Tri-County, testified that the monies were to be distributed when the "title is clear."

On or about September 15, 1953 Norman Brierley, Esq., was appointed statutory receiver of the defendant Maple Shade.

Neither Tri-County nor the individual purchasers are parties to or had notice of the present application.

The creditors generally argue that the deposit of the monies and the notation on the settlement statements of the names of the persons to whom the balance due the seller was to be paid constituted an escrow deposit and impressed the funds due the seller with an irrevocable trust for the benefit of such named persons. They as well assert that payment of the amounts so set forth can be made only to the persons listed on the settlement statement, and that such payment should be now made.

█ A receiver stands in the shoes of the corporation he represents and cannot impeach any act of the corporation which it could not itself successfully assail. *Bankers' Trust Co. v. Maxson,* 100 *N. J. Eq.* 1 (*Ch.* 1926); *Kuser v. Wright,* 52 *N. J. Eq.* 825 (*E. & A.* 1894); *Grobholz v. Merdel Mortgage Investment Co.,* 115 *N. J. Eq.* 411 (*E. & A.* 1934). For the purposes of the matter *sub judice* the receiver is the *alter ego* of the corporate seller and will hereafter be referred to by the latter designation.

█ Under the facts here present there can be no doubt that the settlements between the individual buyers and the seller were escrow settlements under the terms of which the buyer deposited funds requisite to complete his purchase, which funds were to be delivered to the seller only if and when the seller should deliver the title required under the agreement of sale. The seller deposited a deed apparently conveying the required title, which was to be delivered to the buyer only if and when the buyer should pay the balance of the purchase price due under the agreement of sale. The

deposit of both the cash and the deeds was under an escrow agreement, the terms of which were, briefly, as above stated.

There existed as well an escrow agreement between South Jersey and the buyers under the terms of which Tri-County was to certify that South Jersey's mortgages constituted a first lien on the premises involved before the payment of the proceeds thereof to the mortgagors.

In *Cooper v. Bergton,* 18 *N. J. Super.* 272 *(App. Div.* 1952), the court said, at *page* 277:

"An escrow may be created by writing or by parol, or partly by both; upon the deposit in escrow a contract between the parties as to the delivery by the depositary of its subject matter is created; the depositary becomes the agent for both parties as to such delivery; and neither party can alone rescind. *Mecray v. Goldman,* 102 *N. J. Eq.* 559 *(Ch.* 1928), affirmed 105 *N. J. Eq.* 583 *(E. & A.* 1929); *Fred v. Fred,* 50 *A.* 776 *(Ch.* 1901) (not in state reports). Since the depositary is bound by the terms of the deposit and charged with the duties voluntarily assumed by him, the rule is that liability attaches to him if he improperly parts with his deposit. *Mantel v. Landau,* 134 *N. J. Eq.* 194 *(Ch.* 1943), affirmed 135 *N. J. Eq.* 456 *(E. & A.* 1944); 19 *Am. Jur., Escrow, sec.* 18, *p.* 436."

██ As a postulate to the foregoing is the conclusion that the depositary may not part with his deposit, absent a compliance with the terms of the escrow agreement. The depositing parties cannot be forced to accept something short of that for which they bargained and which was expressed in the escrow agreement. It is the duty of the depositary to strictly comply with the terms under which he holds a deed. See 19 *Am. Jur.* 435, *sec.* 17; also *p.* 438, *sec.* 20.

█ In order for the petitioners to succeed in establishing a trust there must be a trust *res,* some kind of property held by a trustee which is the subject of a trust.

*Scott on Trusts, sec.* 74, *p.* 431, reads as follows:

"In any event no trust is created unless the trustee holds some kind of property subject to a trust."

█ What has escaped the attention of the petitioners is the manner in which the funds, allegedly impressed with a trust, came into the possession of Tri-County. Clearly these

funds were deposited in escrow by or on behalf of the pur-
chasers from Maple Shade. Reduced to its most simple
statement, the escrow agreement contemplated that the monies
so deposited were to be delivered to Maple Shade when and
only when the purchasers should receive title to their re-
spective parcels free and clear of all encumbrances. In the
light of the admitted existence of at least two recorded mort-
gages, *i. e.*, Frankel and Peraino, which were neither can-
celled by Maple Shade by payment from funds standing in
its own account—not connected with the funds advanced by
the purchasers—nor for payment of which provision was
made out of the escrow monies—Maple Shade never complied
with the condition of the said escrow agreement. This con-
dition of said agreement, *i. e.*, delivery by it of title free and
clear of all encumbrance, which must precede its claim to
the monies, never occurred. Maple Shade was never, nor is
it in the present status of the matter, entitled to payment of
the monies deposited with Tri-County, and hence there is
not nor was there ever in existence a *res* over which a trust
could be declared.

For petitioners to succeed, it would be necessary for the
court to direct that the monies held in escrow be paid to them
before the seller, through whom they claim, is entitled to
payment thereof. In many instances the proofs disclose that
the funds held by Tri-County are insufficient to satisfy the
liens and encumbrances against the premises. To argue that
the buyers may have recourse against some third party is
no answer. The buyers are entitled to receive in exchange
for their payments the titles for which they bargained. The
seller is entitled to receive the consideration only when it
can deliver such title. The seller is not now entitled to any
payment out of these funds.

It follows, therefore, that for this reason alone it must be
held that the petitioners are not the *cestuis que trust* of an
existing trust.

In addition, it must be apparent that other necessary
parties whose interests would be affected by a decision favor-
able to the petitioners are not before the court on these

proceedings, as an example, the buyers. Absent such parties, the petitioners are not entitled to succeed.

In the light of the foregoing it is unnecessary to pass upon the other contentions of the petitioners.

So that there may be no confusion, it should be noted that this conclusion deals solely with the establishment of an alleged trust at this time in the designated funds, and the immediate payment thereof to the petitioners. Nothing herein contained shall be deemed to adjudicate the liabilities of the parties to the escrow agreements, the final status of the buyers, seller, encumbrancers, unsecured creditors and the escrow agent, nor the multitude of kindred and related problems which must occur, from the admitted facts, to one skilled in the practice of law.

The receiver originally made claim to these funds but subsequently withdrew his demand. For a proper adjudication of the respective rights and liabilities of all of said parties, it would seem that all of the foregoing parties must necessarily be joined in an application, either by the receiver or some other interested party, seeking a determination of these numerous problems.

Application is denied.