James D. Hopkins, J.
The defendant in a libel action moves to dismiss the second and third causes of action in the complaint. The second canse of action alleges that plaintiff, who was engaged in the loan business, ‘ ‘ lost a substantial amount of clientele and business ” as a result of a defamatory article published by the defendant which falsely stated that one Petrilli had testified in a court proceeding that he had been assaulted by the plaintiff. The plaintiff’s allegation of special damages required when a claim of libel concerning the plaintiff is made, *740 but not a claim of libel concerning the plaintiff in his trade or calling (Johnson v. Dithridge, 178 App. Div. 884; Seelman, The Law of Libel and Slander, § 399, p. 395), is insufficient, since the loss of any particular business or the custom of any particular person is not described in the cause of action (Reporters’ Assn. v. Sun Print. & Pub. Assn., 186 N. Y. 437; Tower v. Crosby, 214 App. Div. 392; Steward v. World Wide Automobiles Corp., 20 Misc 2d 188). It is noted that the first cause of action stated in the complaint (not challenged by this motion) pleads a claim of libel concerning the plaintiff’s “good name, credit and reputation.”
The third cause of action stated by the plaintiff is novel in its aspect. The plaintiff alleges that the defendant, as publisher of a newspaper, is under a duty to the plaintiff and the members of the public generally to exercise due care to ascertain the truth of matter printed therein; that the defendant failed to execute that duty in the publication of the material concerning the plaintiff; that transcripts of the court proceeding were available to the defendant, and that the statements published by the defendant did not appear in such transcripts; that by reason of the defendant’s negligence, and without any negligence on the part of the plaintiff, the plaintiff was ‘ ‘ damaged in his business, reputation, name and good standing in the community.” Thus, the plaintiff seeks damages for the publication of negligent misstatement by a newspaper.
Chief Judge Cardozo said in 1931 that “ [T]he assault upon the citadel of privity is proceeding in these days apace. ’ ’ (Ultramares Corp. v. Touche, 255 N. Y. 170, 180.) In the same case, however, he referred to Jaillet v. Cashman (235 N. Y. 511). Jaillet v. Cashman held that the defendant supplying ticker service to brokers was not liable to a customer of a broker as a result of a report negligently appearing on the ticker. In alluding to Jaillet v. Cashman, Chief Judge Cardozo said (p. 185): “ If liability had been upheld, the step would have been a short one to the declaration of a like liability on the part of proprietors of newspapers.”
The opinion written at Special Term by Mr. Justice Tierney in sustaining a demurrer to the complaint in Jaillet v. Cashman (115 Misc. 383, affd. 202 App. Div. 805, affd. 235 N. Y. 511) is instructive. He said (p. 384): “ I think that the relation of the defendant association to the public is the same as that of a publisher of a newspaper, and that its duties and obligations are to be measured by the same standard. A mistake in the report of a fact by one or the other is different in its effect only as to the number of people who may be misled and the extent to *741 which individuals may be misled a matter of degree only. There is moral obligation upon everyone to say nothing that is not true, but the law does not attempt to impose liability for a violation of that duty unless it constitutes a breach of contract obligation or trust, or amounts to a deceit, libel or slander.”
The liability for the use of negligent language has been strictly delimited. The complaining party must show the combination of (1) knowledge by the party sued that information is desired for a serious purpose, and that the complaining party intends to rely and act upon it; (2) injury by the complaining party from erroneous information;' and (3) a relationship, either in contract or otherwise, whereby the complaining party has the right to rely upon the party sued for information, and the latter has the duty to give such information carefully (International Prods. Co. v. Erie R. R. Co., 244 N. Y. 331, 337-338; see, also, Mid-Cent. Fish Co. v. United States, 112 F. Supp. 792, affd. 210 F. 2d 263; 2 Restatement, Torts, §§ 310-311, pp. 840-846). None of these elements is present here.
Actually, the remedy open to the plaintiff through libel is far broader than an action based on negligence. In libel, the offending party is held liable for defamation though innocently made, or made through negligence (Prosser, Torts [2d ed.], § 94, pp. 601-602; 1 Harper & James, The Law of Torts, § 5.5, pp. 363-364). Malice is implied as a matter of law (Seelman, The Law of Libel and Slander, § 133, pp. 121-122; § 136, p. 124). Thus, a newspaper publishing false information is liable, whether the publication was made hastily and without inquiry (Turton v. New York Recorder Co., 144 N. Y. 144, 149), or made on the reliance of a report from a responsible news agency (Louisville Times Co. v. Lyttle, 257 Ky. 132; Wood v. Constitution Pub. Co., 57 Ga. App. 123).
The defendant’s motion is therefore granted, with leave to the plaintiff to serve an amended complaint, if so advised.