374 So.2d 30 (1979)
Jean BIADI, Appellant,
v.
LAWYERS TITLE INSURANCE CORP., Etc., et al., Appellees.
Nos. 77-2243, 77-2354.
District Court of Appeal of Florida, Third District.
July 17, 1979.
Rehearing Denied September 10, 1979.
*31 William John Mason, Miami, Wilfred T. Friedman, New York City, for appellant.
Blackwell, Walker, Gray, Powers, Flick & Hoehl and James E. Tribble, Miami, for appellees.
Before PEARSON, HENDRY and HUBBART, JJ.
PER CURIAM.
By this consolidated appeal we must determine whether entry of a summary judgment in favor of the appellee/defendant, Lawyers Title Insurance Corporation, was proper or whether appellant's contention that such a judgment was unwarranted and constituted error on the ground that genuine issues of material fact remained.
The unrefuted facts of the cause are that during 1972 through 1974 a certain Miami attorney, Milton R. Wasman,[1] devised a scheme whereby a corporation which he caused to be formed, Land American Development Company (LADCO), offered investments to Europeans which were to pay a fixed annual return of approximately ten percent (10%) for five years with a return of principal at the end of that period. The fixed return was on a "guaranteed" basis. Wasman told the European brokers, who represented the investors, that he (Wasman) represented a client, American Securities Investors Company,[2] which owned a substantial number of certificates of deposit on "prime Florida banks"; these were to be used to guarantee the payment of the fixed return and the return of the principal at the conclusion of the transaction.[3] The certificates of deposit were to be equal to one hundred twenty percent (120%) of the amount invested by each European; the theory was to secure each investor as to the principal amount of his investment, including possible fluctuation of the dollar in the world money market, as well as to insure *32 the payment of the interest due annually for five years.[4]
The European brokers required that the certificates of deposit be placed in escrow to insure that they would be available in the event of default. Milton R. Wasman advised said brokers that he had arranged for Lawyers Title Insurance Corporation to act as the escrow agent for consideration and that it would receive each certificate in escrow and would, upon receipt, forward a letter informing the investor that it had received the certificate and would hold it pending receipt of notice from American Securities Investors Company and the investor that it was to be released. Further, in order to insure that American Securities Investors Company would comply in authorizing the release of the certificates in the event of default, the brokers required that Wasman deliver to the escrow agent a "form letter" from American Securities, signed but undated, which authorized release of the certificates to the individual investors. These undated letters were held by the brokers to be used in the event of default; the text of the letter, signed by a representative of American Securities, reads:
"Pursuant to the terms of the escrow of a certain Certificate of Deposit covered by your letter of [date], you are hereby directed to deliver this escrowed Certificate of Deposit to [name of investor]."
Wasman and Lawyers Title, through one of its employees, arranged that Lawyers Title would forward the letter of transmittal to each investor, as it received a certificate of deposit for his or her benefit. Wasman prepared the draft and delivered it to appellee's employee, who proceeded to have it typed on Lawyers Title stationery. The text of the form-type letter addressed to the investor and signed by the employee at Lawyers Title, reads in pertinent part:[5]
"We have this day received in escrow as a pledge a fully negotiable Certificate of Deposit from American Securities Investors Company in the amount of [insert of appropriate figure], dated [date inserted], with instructions to hold same until both you and American Securities Investors Company have directed us, in writing, to deliver the Certificate. Neither party may request the Certificate without the other's approval in writing ..."[6]
Subsequently, after default in payments, counsel was retained by appellant, who represents the brokers and investors in the cause, and demand was made to examine the certificates of deposit in possession of Lawyers Title Insurance Corporation. Thereafter appellee exhibited a copy of what it referred to as the "escrow agreement" which it has maintained throughout the proceedings forms the basis for the escrow relationship. It is a form-type letter addressed to Lawyers Title from a representative of American Securities Investors Company which accompanied each certificate of deposit as it was received at Lawyers Title. The text of the letter reads:
"Enclosed you will find a Certificate of Deposit in the face amount of [figure inserted] delivered to you in escrow for the purpose of depositing the same with you and you are requested and directed at all times hereafter to retain possession of the Certificate of Deposit until such time as you have received instructions in writing as to the disposition of same from [investor's name inserted] and American Securities Investors Company.

*33 "Since the Certificate of Deposit is deemed to have been pledged by the parties, it shall be delivered, upon joint instructions, to either party or designee. The directions to deliver the Certificate will be furnished to you with complete instructions so that you have no responsibility to assume the interpretation or determine any rights of any party under any contractual arrangements and are relieved of any liability with respect to the determination of delivery. Your sole responsibility as an escrow agent is to retain possession of the Certificate until you receive the above instructions.
"At all times you shall not furnish any party with any information regarding escrow. All parties have been advised that this is a condition. Your Escrow Receipt is the only document you are required or authorized to furnish.
"You are further directed to require in the instructions from the parties verification of the signature of [investor's name inserted] by a bank. This is to protect [investor's name inserted] from any forgery."[7]
After demand was made for the certificates and appellee refused to deliver, the appellant, Biadi, the assignee-trustee for the investors, instituted suit against appellee and others alleging, inter alia, that Lawyers Title acting as the escrow agent, negligently caused the brokers and investors to rely upon its written statement, acted without the exercise of due care and judgment, failed to use ordinary business prudence, and performed in a grossly negligent and reckless manner by the written verification to the investors that the certificates of deposit were valid, authentic and "fully negotiable" when, in fact, they were worthless. Appellant's complaint sought both compensatory and punitive damages for the losses incurred by the investors as an alleged direct consequence of appellee's written letters of transmittal. Appellee thereafter filed a motion for summary judgment, asserting as grounds that as a matter of law no cause of action was set forth in the complaint against the appellee; that appellee properly performed all its duties as the escrow agent, in accordance with the terms and provisions of the "escrow agreement" entered into between American Securities Investors Company and appellee; that it did not undertake, nor was it obligated to undertake an investigation as to the validity of the subject documents; that it assumed no such responsibility and was not liable in the event the documents were found to be invalid and unenforceable; that appellee, under the terms and provisions of the "escrow agreement" was not obligated to verify and confirm the existence and/or solvency of the issuing bank; that the investors did not rely upon statements or representations made by Lawyers Title. The trial court granted appellee's motion upon the ground that no genuine issue of material fact remained and Lawyers Title was entitled to judgment as a matter of law; the cause against Lawyers Title was thereby dismissed with prejudice. Appeal ensued.
Appellant asserts in its major arguments herein that genuine issues of material fact remain with regard to whether Lawyers Title Insurance Corporation, as escrow agent, negligently certified the validity of the subject certificates of deposit and whether, by its language used in the letters of transmittal to investors, it effectively took on "voluntary" and/or "additional" duties and responsibilities (beyond those terms and provisions specifically stated in the escrow agreement) for which it could legally be found liable. Appellant urges the court to recognize the significance of the following: that the investors were in no way parties to the escrow agreement between the appellee and American Securities; that they had no knowledge of the specific terms and provisions of said agreement; that the investors and brokers reasonably believed, and were led to believe, that the conditions and provisions delineated *34 in their contract with LADCO coupled with the transmittal letters from appellee (signed by appellee's employee over the inscription "Legal Department")[8] embodied the entire contract provisions of the transactions; that the investors and brokers reasonably relied upon the representations of a "reputable, substantial and well-known" corporation such as Lawyers Title;[9] that the appellee admittedly failed to make even a cursory investigation into the status, validity and/or legitimacy of the Cayman Island company, American Securities Investors, or the Panamanian bank that supposedly issued the certificates, or the certificates of deposit themselves, but that it, nevertheless, voluntarily certified the certificates to be "fully negotiable."
Appellee raises the following: that it strictly complied with the escrow agreement entered into with American Securities, which is all that is legally required of it to do as an escrow agent; that no additional instructions were provided, either verbally or in writing, other than those set forth in the escrow agreement; that it was never requested of appellee nor was it an obligation of appellee to certify the validity of the certificates; that appellee was not obligated to notify or secure the European's consent to the escrow agreement, as written.
By our having heard oral argument of the parties and having reviewed the record, which includes pleadings, motions, transcripts of depositions, letters, deeds, affidavits, memoranda, and orders of the lower tribunal, we have determined that the entry of summary judgment constitutes error in this cause.
Although Florida law adheres to the general proposition that the "escrow instructions" define the duties of the escrow agent,[10] there must be consideration as to further steps that were taken in this transaction which concern "additional" or "superseding" duties that could be construed to have been voluntarily undertaken by appellee-escrow agent, and about which a jury should decide.
It has been held that the duty of an escrow holder is determined by the application of the principles of agency, whether the escrow holder is considered the holder with duties to both parties or the agent for the depositor alone, and the holder has a fiduciary responsibility and is required to exercise reasonable skill and ordinary diligence.[11]
In the case sub judice, it would be irrelevant for us to determine whether, at the outset of the escrow arrangement, the appellee was to be considered the escrow agent for the benefit of all parties or merely for Wasman's alter ego American Securities Investors Company.[12] The critical consideration for the trier of fact below deals rather with whether the acts of the appellee in preparing and dispatching the transmittal letters do, as alleged, give every indication *35 to the brokers and investors that Lawyers Title Insurance Company's "Legal Department" was certifying that the certificates were valid and fully negotiable. The natural corollary consideration then presents itself: that is, whether, by appellee's acts, it caused the recipients of the transmittal letters to reasonably believe that the escrow agent was performing acts in furtherance of their interests, i.e., that it was diligently carrying out duties pursuant to its agreement to act as escrow agent. Ultimately, it must be decided whether (a) the investors had cause to rely upon the representations under these circumstances,[13] and (b) whether the escrow agent can be held liable for negligent performance of acts that are outside the precise parameters of the written escrow agreement. Since there was a verbal request by Wasman that appellee dispatch the transmittal letters, to which the appellee consented, the jury must then determine whether once that consent was given and execution begun, the duty arose to carry out the apparent certification with care and diligence[14] and whether appellee negligently implied that appropriate methods of verification had been accomplished and resolved.
In conclusion, we find that the record reveals that material issues of fact remained unresolved at the time the trial court entered the summary judgment, and the issues should be presented to the trier of fact for determination.
The cause is reversed and remanded to the trial court for further proceedings.
NOTES
[1] He is also a defendant in the trial court; he failed to answer the complaint and default has been entered against him.
[2] In point of fact, it was later found that Wasman, himself, established the corporation in the Cayman Islands for the purposes of the scheme.
[3] At the insistence of the European brokers, Wasman forwarded several samples of the certificates of deposit which were claimed to be representative of the certificates which would be available to guarantee the investments; the samples were genuine certificates from legitimate banking institutions.
[4] In addition to the guarantee by way of the certificates of deposit, the investor was to receive a deed to Florida realty as secondary security together with a policy of title insurance. However, with the exception of one investor, no title insurance was issued on the properties. As it turned out, the deeds were on non-existent land, mortgage land, valueless property or were outright forgeries.
[5] The first two letters of transmittal were dispatched to the investors stating that a "Certificate of Deposit" had been received; however, Wasman thereafter revised the wording, and appellee's employee consented to use the revised language, "fully negotiable Certificate of Deposit" in all subsequent transmittal letters.
[6] As later events revealed, the alleged issuing bank, Central National Trust Company, Inc. of Panama City, Republic of Panama, was non-existent and had been a creation by Wasman in order to perpetrate the fraud.
[7] For explanation of "Escrow Receipt" in paragraph three, refer to prior text recitation of letter sent to each investor by Lawyers Title upon its receipt of certificates of deposit from American Securities Investors Company.
[8] The Lawyers Title employee admittedly followed the instructions of Milton R. Wasman when he prepared and signed the transmittal letters over the words, "Legal Department", although appellee-corporation has no such department.
[9] At the outset, the brokers had been furnished with the balance sheet and profit and loss statement published by appellee which reflected that it had millions of dollars in assets.
[10] See Cradock v. Cooper, 123 So.2d 256, at p. 257 (Fla.2d DCA 1960), where the court stated:

"In considering the issue of agency in this case, it is apparent that the escrow agreement itself becomes the primary consideration and the language of this agreement is all controlling."
[11] See 28 Am.Jur.2d, Escrow § 16; Rianda v. San Benito Title Guarantee Co., 35 Cal.2d 170, 217 P.2d 25 (1950); Amen v. Merced County Title Co., 58 Cal.2d 528, 25 Cal. Rptr. 65, 375 P.2d 33 (1962).
[12] It must be noted that in Florida it is generally accepted that the escrow holder is the agent for both parties, and it may be looked upon as a special agent of both parties, see, 12 Fla.Jur. Escrow § 9. The holder has also been held to be a trustee of both parties charged with the performance of an express trust governed by the escrow agreement with duties to perform for each of the parties. 12 Fla.Jur. Escrow § 11. See also, 28 Am.Jur.2d Escrow § 11.
[13] See Doyle v. Chatham Phenix National Bank, 253 N.Y. 369, 171 N.E. 574 (1930) and Sacco v. Herald Statesman, Inc., 32 Misc.2d 739, 223 N.Y.S.2d 329 (1961), for discussions of "reliance" under similar facts.
[14] There have been decisions in negligence cases, where the allegedly negligent act, even though gratuitously undertaken, has been subjected to the scrutiny of the standard of duty of due care. See Banfield v. Addington, 104 Fla. 661, 140 So. 893 (1932) and 6 A.L.R.2d 284.