LEVY, Judge
(dissenting).
I respectfully dissent. The trial court abused its discretion in granting the motion for rehearing and overruling the general master’s findings and recommendations because those findings and recommendations were supported by competent substantial evidence. A trial court may not reject a general master’s findings of fact and conclusions drawn therefrom unless there has been a showing of clear error in that those findings or conclusions are not supported by reliable evidence and are not in accordance with prevailing law. Frank v. Frank, 75 So.2d 282 (Fla.1954); Goldman v. Smargon, 524 So.2d 479 (Fla. 3d DCA 1988); Rosenthal v. Rosenthal, 464 So.2d 594 (Fla. 3d DCA 1985); Brinkley v. Brinkley, 453 So.2d 941 (Fla. 4th DCA 1984).
Here, the critical, and undisputed, fact found by the master was that the specific and unambiguous instruction given to the escrow agent, Esteva, to disburse $350,000 to W.C. Investments, Inc., was not specifically followed. In light of this undisputed evidence, the general master concluded that Richmond was entitled to recover the $77,817.01 which was not disbursed to W.C. Investments, Inc. as required by appellant’s specific instructions. I find this conclusion to be supported by reliable evidence and, furthermore, to be in accordance with the prevailing law in the area of deposits and escrow agents.
Once Esteva assumed the role of escrow agent for the parties, her responsibilities became as that of a trustee in charge of the performance of an express trust. Tomasello v. Murphy, 100 Fla. 132, 129 So. 328 (1930); Chace v. Johnson, 98 Fla. 118, 123 So. 519 (1929). As an escrow agent, Esteva owed fiduciary duties to both parties to strictly comply with the terms of the escrow agreement. Tucker v. Dr. P. Phillips Co., 139 F.2d 601, 602 (5th Cir.1943); Five Hundred North Atlantic, Inc. v. Ritter, 475 So.2d 1264 (Fla. 5th DCA 1985); Armbruster v. Alvin, 437 So.2d 725 (Fla. 3d DCA 1983); Biadi v. Lawyers Title Ins. Corp, 374 So.2d 30 (Fla. 3d DCA 1979); Cradock v. Cooper, 123 So.2d 256 (Fla. 2nd DCA 1960). As stated in Tucker, 139 F.2d at 602: “In Florida an escrow agent holds as a trustee charged with the performance of an express trust, and he must act in strict accordance with the terms of the escrow agreement lest he be liable in damages for any loss suffered by reason of any departure from those terms.” (emphasis added). See also, Malta v. Phoenix Title & Trust Co., 76 Ariz. 116, 259 P.2d 554 (1953) (escrow agent acts as a trustee and must strictly comply with escrow agreement); Colonial Sav. and Loan Ass’n. v. Redwood Empire Title Co., 286 Cal.App.2d 186, 46 Cal.Rptr. 16 (1965) (escrow holder must comply strictly with instructions of principal); Marvel Industries v. Boatmen’s Nat. Bank of St. Louis, 362 Mo. 8, 239 S.W.2d 346 (1951) (escrow agent is “absolutely bound by the terms and conditions of the deposit and charged with a strict execution of the duties voluntarily assumed.”); Pemberton Lumber & Millwork Industries, Inc. v. Maple Shade Development Co., 31 N.J.Super. 155, 106 A.2d 32 (1954) (escrow agent must strictly comply with terms of escrow agreement; “[t]he depositing parties cannot be forced to accept something short of that for which they bargained....”); Levin v. Nedelman, 141 N.J.Eq. 23, 55 A.2d 826 (1947), rev’d on other grounds, 142 N.J.Eq. 769, 61 A.2d 76 (1948) (same); Burford v. Bridwell, 199 Okl. 245, 185 P.2d 216 (1947) (same).
Because the escrow agreement is to be strictly executed, the escrow agent is not authorized to interpret or construe its terms. Southern v. Chase State Bank, 144 Kan. 472, 61 P.2d 1340 (1936); Marvel Industries, 239 S.W.2d at 346. Thus, it was error for Esteva to interpret the terms of the escrow agreement as meaning that $77,817.01 of the $350,000 in restricted funds could be disbursed to the Central Bank, or to any entity other than W.C. Investment, Inc., when the agreement specifically stated that the $350,000 was to be disbursed solely to W.C. Investments.
Since the escrow agent was specifically directed to disburse the $350,000 to W.C. Investments, Inc., the escrow agent was guilty of a mis-delivery once the escrow agent disbursed any of the funds (in this *1244 case, $77,817.01) to any other entity. Ap-pellee argues that appellant should not recover from the escrow agent, for what is tacitly admitted to be a “mis-delivery”, because of appellee’s contention that the appellant was not injured by the mis-delivery, but, rather, was injured as a result of the financial loss suffered by appellant through the acts of a third party. Appel-lee’s argument, however, only serves to distract from the basic, and fundamentally simple, facts that occurred in this case.
As noted previously, it is undisputed that the appellant gave the escrow agent $350,-000 with specific instructions to the escrow agent to deliver the $350,000 to W.C. Investments, Inc. It is further undisputed that the escrow agent only delivered $272,-182.99 to W.C. Investments, Inc., thereby leaving a balance of $77,817.01 remaining from the original $350,000 fund. It is further undisputed that the escrow agent delivered the $77,817.01 to Central Bank despite the fact that the said sum constituted the balance of a larger fund of money that was given to the escrow agent with specific directions to deliver the said funds to W.C. Investments, Inc. After delivering the $272,182.99 to W.C. Investments, Inc., the escrow agent did not notify the appellant that the escrow agent had $77,817.01 of undelivered funds remaining. In fact, not only was the mis-delivery of the $77,817.01 to Central Bank contrary to the specific delivery instructions given to the escrow agent by the appellant, the record demonstrates that the appellant never even knew of the delivery of the $77,817.01 to Central Bank until after that misdelivery had taken place.
Although appellant ultimately lost his investment due to the acts of a third party, it is clear that appellant’s financial loss would have been $77,817.01 less if the escrow agent had not misdelivered that sum. More specifically, if the escrow agent would have notified appellant that she had $77,817.01 of appellant’s funds remaining after delivering the $272,182.99 to W.C, Investments, Inc., then appellant, and not the escrow agent, could have made the decision as to what should be done with the $77,817.01. By making the mis-delivery, it was the escrow agent who caused the appellant’s $77,817.01 to be delivered to Central Bank.[1] If one were to accept appel-lee’s argument, then one would believe that appellant would not have been “injured" if the escrow agent had used the $77,817.01 to make mortgage payments, car payments, etc. on behalf of appellant, since these payments would have theoretically served to lessen outstanding financial obligations of the appellant and, therefore, would not have caused any “injury” to the appellant (according to appellee’s reasoning).
Such reasoning ignores two basic principles that make the resolution of this case extremely simple. First, the $77,817.01 belonged to the appellant and, therefore, it was the appellant, and only the appellant, who had the right to decide how, when, and where that money should have been spent. Secondly, the escrow agent had the absolute obligation and duty to either disburse the restricted funds in strict compliance with her escrow instructions or, as her only alternative, to go back to the appellant so that she could either receive new instructions or be told to return the $77,817.01 to the appellant. In view of the fact that it is undisputed that the escrow agent did not deliver the $77,817.01 in accordance with the strict instructions that she had received, and in consideration of the foregoing, the escrow agent must be held liable for having failed to comply with her legal obligations. Accordingly, I would reverse.

. It is to be noted and stressed that Central Bank played no part in causing appellant to lose his funds or the appellant’s financial investment to fail.