ROY T. LONGWORTH ET AL., APPELLANTS, v. FARMERS & TRADERS BANK OF WARSAW, RESPONDENT.*

Kansas City Court of Appeals.   December 5, 1927.

(1)

2

*Corpus Juris-Cyc. References: Appeal and Error, 4CJ, section 2683, p. 750, n. 92; Escrows, 21CJ, section 29, p. 884, n. 12; p. 885, n. 16; section 45, p. 895, n. 63.

*Bohling & Bohling* for appellant.

*Henry P. Lay* for respondent.

BLAND, J.—This is an action for damages alleged to have been suffered by reason of the wrongful delivery of a deed by defendant, deposited by plaintiffs in escrow with it. The case was tried before the court, resulting in a judgment in favor of defendant and plaintiffs have appealed. The suit is in three counts, the third count being the one upon which the case was tried and the one in which damages are asked. Counts one and two were dismissed. The case was tried upon an agreed statement of facts disclosing the following:

Plaintiffs are husband and wife residing in Detroit, Michigan, and were the owners of eighty. (80) acres of land in Benton county, Missouri; on November 9, 1923, plaintiffs listed their farm for sale with one Owen, a resident of Warsaw. The terms of sale were to be $1500 cash, net to plaintiffs, or if a cash purchaser could not be found, $2000 net to them, $1000 in cash and the balance secured by a first mortgage on the property. On December 31, 1923, Owen wrote plaintiffs that he had an offer of $1500 cash for the farm and asked them for a $100 commission. He directed plaintiffs to send a deed to the place to the defendant, stating that it would take about twenty or thirty days to close the deal. Plaintiff accepted this proposition by letter dated January 4, 1924, and on the next day they wrote defendant enclosing a warranty deed to the property with the name of the grantee in blank, and stating that the deed was not to be delivered until Owen paid to the defendant the sum of $1500. Later plaintiffs agreed to allow Owen a commission of $100 and communicated this fact to the defendant with instructions to pay Owen $100 out of the purchase price of $1500. On January 30, 1924, Owen wired plaintiffs that he could close the deal at once if plaintiff would accept $700 cash and a second deed of trust for $700, secured by a note payable July 1, 1924. Plaintiff refused this offer but agreed to take $700 cash and a note for $800, secured by a first deed of trust on the farm, payable July 1, 1924. The matter dragged along until April 7, 1924, when plaintiff requested defendant to return the deed. Receiving no reply, plaintiffs,

on April 21, 1924, again requested defendant to return the deed and on April 24, 1924, defendant wrote plaintiffs that the deal has not been closed, stating that if plaintiffs desired the return of the deed, defendant would forward it but advised them that the "deal will be closed up right away." Plaintiffs on April 28, advised defendant that if the matter was not closed up within the next two or three days, the purchaser should deposit $100 to plaintiffs' credit to secure the closing of the deal by May 31, 1924; and that if the $100 was not deposited with defendant to plaintiffs' credit by May 12, 1924, then the deed should be returned.

The agreed statement of facts recites that "between April 28, 1924, and July 7, 1924, plaintiffs received" a deposit slip of $1000 from defendant. This slip shows that on May 9, 1924, that sum was deposited with the defendant "for Longworth deed against contract." On July 7, 1924, plaintiffs wrote asking defendant to advise them "what the terms of this contract are and is there a time limit to it?" On July 11 defendant wrote plaintiffs that the $1000 left there was used in "taking up a deed that you sent here in January . . . the other $500 has not been paid to us as yet and we still have your deed here," and that if plaintiffs desired to have the deed returned, the bank would return the $1000 to Mr. Jones of Lincoln, Missouri, the man who deposited it. The defendant asked plaintiffs for explicit instructions as to what they desired and stated that it had gone to considerable trouble and was making no service charge. However, defendant did not give plaintiffs the terms of the contract.

On July 29, 1924, plaintiffs entered into a written agreement with Owen extending the time for closing the contract to September 15, 1924. As a consideration for such extension Owen consented to forego his $100 commission. He agreed to deposit $500 with the defendant, in addition to the $1000 on deposit, by September 15th and if he failed to deposit it at that time, he agreed to pay plaintiffs eight per cent interest on $1500 from July 29, 1924, until the "date on which the same is paid." On August 24, 1924, plaintiffs wrote defendant acknowledging receipt of its letter of the 11th and stating that the time for closing the matter had been extended to September 15; that Owen had waived his $100 commission; that it would be necessary for the latter to deposit $500 in addition to the $1000 then held by the defendant in escrow on or before September 15, 1924, and that when Owen had deposited the total sum of $1500 to plaintiffs' account it would be satisfactory to deliver the deed to him. On October 1, 1924, plaintiffs' attorney wrote defendant stating that he had written to Owen advising him that unless he had paid the sum of $500 plus interest at the rate of eight per cent from July 29 with the defendant on or before October 10, 1924,

plaintiffs would recall the deed left with defendant in escrow and institute proceedings for recovery of the land sold by Owen for the plaintiffs, and asking defendant to advise the writer on or before October 10 whether or not Owen had made such a payment. On October 7, 1924, the defendant wrote plaintiffs' attorney that $1200 had been left in escrow with defendant and that this amount lacked $300 of the amount necessary to be deposited according to its. contract with plaintiffs.

On November 12, 1924, defendant wrote plaintiffs that it had been threatened with a suit by Mrs. Graf, the buyer of the farm, and that it had delivered plaintiffs' deed taking an indemnity bond, of which a copy was enclosed. This bond was given by Mr. Jones of Lincoln and was in the sum of $600. It provided, among other things, that whereas Mr. and Mrs. Graf had caused to be deposited with the defendant the sum of $1200 and was claiming they had paid plaintiffs through Owen, their agent, the further sum of $600 and that by reason thereof they were entitled to the delivery of the deed and whereas in consideration of the execution of the bond defendant had delivered the deed, it was, agreed defendant should hold the said sum of $1200 on deposit with them until plaintiffs should furnish an abstract of title showing a good title and that if defendant should be sued by plaintiffs, that said Jones would defend such suit or suits and pay the judgment, costs and attorney's fees therein so that defendant should be held harmless by reason of the delivery of the deed. The deed was delivered to Mr. and Mrs. Graf on November 12, 1924.

The facts further show that the purchase price of the farm was $1800 and that after its purchase Mr. and Mrs. Graf paid Owen the sum of $800 on the purchase price; that in order that the balance of $1000 might be paid by the Grafs, a deed of trust was executed by them to Jones in that sum and Jones deposited the money with defendant to be paid plaintiffs when the title to the land was made good; that Owen finally deposited $200 of this $800 with the defendant, which was a part of the $1200 that defendant on October 7th notified plaintiffs had been left with it, and that after this $200 was deposited in the bank plaintiffs were paid the further sum of $100 by Owen. Plaintiffs at all times understood that the selling price of the property was $1500 but on December 4, 1924, they discovered that on December 31, 1923, Owen had entered into a contract with the Grafs for the sale of the land for $1800, the payments to be made as follows: $100 cash, the receipt of which was acknowledged; a first deed of trust upon the land in the sum of $1000 to be given by the Grafs, payable in three years with interest at the rate of eight per cent, and a second deed of trust given by the same parties for the sum of $700 to run for a period of six months. It was stipulated in the contract of sale that the second

mortgage should be paid out of the proceeds of a $1300 deed of trust on property in Omaha, Nebraska, and that the Grafs should have the privilege of entering upon the property at the time the contract was signed "for the purpose of making improvements on the fences, or otherwise." The agreed statement of facts recites: ". . . that plaintiffs subsequent.to the institution of these proceedings, received from defendant twelve hundred dollars ($1200) on account, upon release of said twelve hundred dollars ($1200) to plaintiffs by the depositors thereof, Minnie V. Graf, Frederich G. Graf and G. M. Jones."

The first count of the petition states that plaintiffs listed the farm with Owen; that the latter sold it to the Grafs for $1800; that the purchasers had paid the whole of the purchase price; that on or about May 9, 1924, defendants received for and on behalf of plaintiffs $1000; that although requested to do so, defendant had failed, neglected and refused to pay the said sum to plaintiffs, and plaintiffs prayed judgment against the defendant in that sum. The second count states that on or about October 7, 1924, the defendant received for and on behalf of plaintiffs the sum of $200 of said purchase price and though often requested to do so it had failed, neglected and refused to pay the same to plaintiffs. Plaintiffs asked judgment in the sum of $200. The third count, as we have already stated, is for damages suffered by plaintiffs on account of the unauthorized delivery of the deed to Owen in violation of the escrow agreement. In this count plaintiffs seek to recover the sum of $600.

Plaintiffs insist that the court erred in rendering judgment against them. There was no declaration of law or finding of fact requested or given and in this situation if the action of the court can be sustained upon any theory, it is our duty to affirm the judgment. There is no question but that plaintiffs are entitled to recover damages for the violation of the escrow agreement provided that they have not ratified the act of the defendant in turning over the deed so that the buyers of the property might receive the same. The law in reference to this matter is well stated in Corpus Juris.

"Where property deposited in escrow is disposed of without compliance with the conditions of the deposit, the depositor is entitled to recover such damages as he may suffer through the depositary's unwarranted act, and where the grantee or obligee participates in the wrongful delivery he also may be liable. But recovery must be limited to the damages actually attributable to the wrongful delivery."

"Unauthorized delivery of the deposit by the depositary to the grantee may be ratified by the grantor." [21 C. J. 884, 995.]

We think there is no question but that there is evidence in the record from which the court might conclude that plaintiffs have

ratified the conduct of defendant in turning over the deed as aforesaid, and cannot now sue the defendant on the cause of action stated in the third count of their petition. [Eichlor v. Holroyd, 15 Ill. App. 657; Dixon v. Bristol Savings Bank, 102 Ga. 461, 467, 468; 20 C. J., p. 18, par. 13.] Defendant has not favored us with a brief but evidently the court decided the case against the plaintiffs on the theory that they had ratified defendant's action in delivering the deed.

Plaintiffs theory in reference to this matter is stated as follows:

"It is thus apparent that appellants on November 12, 1924, while entitled to but one satisfaction, had two causes of action arising out of the violation of the transaction; One: An action against their agent Owen in the sum of $600—the difference between the cash deposit (later turned over to appellants) of $1200 and $1800, the consideration for appellants' eighty acres of land. The other: An action against respondent for $300—the difference between the cash deposit (later delivered to appellants) of $1200 and $1500—the escrow agreement. Owen paid appellants $100 on his $600 debt (Abs. p. 33) but this payment was made by Owen on Owen's debt and not by respondent on respondent's debt."

We think plaintiffs' view of the case sustains the theory of ratification. The debt of Owen referred to by plaintiffs admittedly was that created by his receipt of the sum of $1800 from the Grafs by reason of a sale of the property to them. Owen under defendant's theory would not have been indebted to plaintiffs in the sum of $600 had it not been for the delivery to the Grafs of the deed which was the consummation of the sale of the farm and which made it possible for Owen to receive the purchase price of $1800. Plaintiffs therefore accepted $100 from Owen on the theory that the deed was properly delivered to the Grafs and that Owen having received the purchase price, owed plaintiffs the balance that they had not received. Aside from this, we find that in counts one and two of the petition, plaintiffs alleged that the farm was sold for $1800 and of this amount $1200 of the purchase price had been received by the defendant and although demanded of the defendant it had refused to pay the same to plaintiffs. The $1200 was afterwards paid to plaintiffs and counts one and two were dismissed. This was evidence tending to show that plaintiffs had ratified the conveyance of the farm to the Grafs as they were seeking the money that had been paid by the purchaser of the farm upon the purchase price and had recovered $1200 of it. We need not say that as a matter of law the evidence shows ratification on plaintiffs' part of the act of defendant in delivering the warranty deed placed in its hands in escrow, but we think that there was ample evidence from which the court, sitting as a jury, could so find. Having ratified the action of de-

fendant in delivering the deed, plaintiffs are not now in a position to further pursue the defendant.

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.

## ON REHEARING.

ARNOLD, J.—The chief contention of plaintiffs in their motion for rehearing and in their argument is that as defendant's answer was a general denial and ratification was not pleaded, defendant is precluded from urging that point at this time. Plaintiffs cite many cases in support of the general rule that, unless pleaded, ratification is not in the case.

A review of the record shows the case was tried on an agreed statement of facts, consisting almost wholly of communications between the parties and one Owens, the selling agent. This evidence tends to show ratification of the deal as finally consummated, and it was admitted as per stipulation, the record shows, and was not challenged at the trial. Had it been challenged, defendant would have been entitled to amend its answer to cover the point presented by the evidence to correspond to the facts shown. [Ehrlich v. Mittelberg, 299 Mo. 284, 252 S. W. 671.] The rule is well established in this respect that an appellate court will treat the answer as having been properly amended. This question would seem to have been determined in the Ehrlich case at page 301. We think the point requires no further discussion. [See, also, Hall v. Hein (Mo. App.), 263 S. W. 514.] This ruling is held not to be in conflict with any of the cases cited by plaintiffs.

Complaint is made that this court in the original opinion found that an escrow agreement existed and that it was breached by defendant, and then sustains the judgment for defendant on the theory that plaintiffs ratified the breach of the escrow agreement. It is insisted that such decisions is in direct contradiction of the written pleadings, and that before there could be a ratification of a breach of the escrow agreement, such agreement must have existed and this defendant's answer denies.

The petition pleads an escrow agreement and such agreement is shown by the stipulated facts, to-wit, defendant's letter of February 6, 1924, to plaintiff, as follows:

"We received the deed referred to in your letter and are holding the same in escrow according to instructions which accompanied same."

The answer was a general denial. In Ledbetter v. Ledbetter, 88 Mo. 60, 61, 62, it is said:

"Ordinarily, a statement of new facts showing a nonliability, impliedly at lease admits a liability, but for such new facts. Hence,

it is often said an answer setting up new matter by way of defense should confess and avoid the plaintiff's cause of action. [State to use, etc., v. Williams, 48 Mo. 212; 1 Chitty Plead. (16 Am. Ed.) 551.] But the confession is not necessarily an absolute one. It need not be made in terms. It is often only implied from the nature of the defense, or assumed for the purpose of the particular defense. [Bliss Code Pleadings, sec. 341.] Traverses and answers in avoidance may go together where not inconsistent. In Hopper v. Hopper, 11 Paige, 46, it is said the defendant 'cannot set up two defenses which are inconsistent with each other that if the matters constituting one defense are truly stated, the matters upon which the other defense is attempted to be based must necessarily be untrue in point of fact. But the defendant may deny the allegations upon which the plaintiff's title to relief is founded, and may, at the same time, set up in his answer any other matters not wholly inconsistent with such denial.' In Nelson v. Brodhack, 44 Mo. 599, in speaking of consistent defenses, BLISS, J., says: 'The right will be secured if the consistency required be one of fact merely, and if the two defenses are held to be inconsistent only when the proof of one necessarily disproves the other.' [See, also, McAdow v. Ross et al., 53 Mo. 202; State ex rel. Davis v. Rogers, 79 Mo. 286.] The defendant, therefore, in an action of ejectment, may plead by way of a general denial, and rely upon that as a complete defense. He may also, in the same answer, plead an equitable defense and rely upon that as an independent defense.''

The petition and proof fully justified the court in holding there was such an escrow agreement; that, under the stipulation, it was breached by defendant, and, under the rule enunciated above, there was a ratification by plaintiffs and that this was one of the theories upon which the case was tried and determined in the court below.

What we have said covers all the points raised in plaintiffs' brief and argument on rehearing. We adhere to our former opinion in the case, affirming the judgment.