J. A. COLLIER and Nona Collier, Plaintiffs-Respondents,

v.

L. Q. SMITH and Sally J. Smith, Defendants-Appellants.

No. 7620.

Springfield Court of Appeals.

Missouri.

Jan. 10, 1958.

Clayton Little of Little & Enfield, Bentonville, for appellants.

Gordon R. Boyer, Lamar, for respondents.

McDOWELL, Judge.

This is a court tried case. The appeal is from a judgment rendered in the Circuit Court of Barton County, Missouri, May 16, 1955, in favor of plaintiffs and against defendants for $6,713.90, which was declared by the court to be a lien against defendants' real estate situated in said county.

Plaintiffs' petition, in substance, alleges that defendants entered into a contract and escrow agreement with Mrs. Bertha Crider to trade equities in certain tourist courts; that pursuant to this escrow agreement, defendants executed a deed to the Centennial Courts at Gainesville, Texas, (subject to two liens) which was deposited with the First State Bank of Gainesville, as escrow agent, and was not to be delivered to Mrs. Crider until she paid off a second mortgage in the approximate sum of $10,500 on the Alma Plaza Courts of Alma, Arkansas.

The petition pleaded that plaintiffs entered into a written contract with defendants for the exchange of their farm lands in Missouri for the "Alma Plaza Courts", known as the Bertha Crider property (subject to two deeds of trust); that as a part of such agreement, defendants assigned to plaintiffs all their interest in the Bertha Crider escrow agreement and delivered to them a warranty deed to the Alma Plaza Courts; that relying upon the terms of the escrow agreement, and the assignment to plaintiffs thereof, plaintiffs did on the 11th day of May, 1953, execute and deliver to defendants a warranty deed conveying their interest in the real estate (described) located in Barton County, Missouri. That said warranty deed was not to be recorded by defendants until such time as the second mortgage on the Alma Plaza Courts, as shown in the escrow agreement, was fully paid.

That defendants wrongfully and fraudulently on May 28, 1953, recorded the warranty deed on the Missouri property and

acquired title thereto; that defendants wrongfully and fraudulently on May 29, 1953, induced the escrow agent, The First National Bank of Gainesville, Texas, by false representations to release the escrow agreement and to deliver to Mrs. Bertha Crider the deed covering defendants' property in Gainesville, Texas, and at such time of delivery, Bertha Crider had paid only $5,000 on the second deed of trust, leaving a balance due on such second deed of trust in the amount of $6,713.90; that defendants had falsely represented to the bank that the Crider note had been fully paid.

It stated that plaintiffs, not knowing of the wrongful and fraudulent actions of defendants in inducing the release of the escrow agreement, did on the 30th day of September, 1953, convey to J. J. McBride and Estella McBride, by warranty deed, their interest in the Alma Plaza Courts in Crawford County, Arkansas, free and clear of the $10,500 second mortgage; that due to defendants' wrongful and fraudulent acts plaintiffs have become liable under their covenants of warranty for the unpaid balance of the second deed of trust; that they have been compelled to make trips to Alma, Arkansas, and Gainesville, Texas, in efforts to secure release of this second deed of trust and have employed attorneys and been out expenditures solely occasioned by the breach of trust caused by the defendants' wrongful acts.

It states that the Barton County real estate, conveyed by plaintiffs to defendants, was subject to two deeds of trust and that plaintiffs are now the owners thereof, having purchased same to prevent foreclosure and that any determination of the issues in this case will be subject to these prior deeds of trust.

That by reason of the wrongful and fraudulent acts of defendants, they have been divested of their interest in the real estate located in Barton County and that the judgment herein against defendants should be made a lien against said real estate subject to the prior deeds of trust.

That if the court should determine that the damages sought are not determinable in so far as the balance of the second deed of trust is concerned or that the same are speculative, then plaintiffs have no complete and adequate remedy at law and the cause should be determined as an equitable matter and that the defendants should be required to furnish security for payment of the second deed of trust.

The prayer is for judgment in the amount of $6,713.90 with interest and for costs expended and that the judgment be made a special lien against the real estate in Barton County (described). In the alternative plaintiffs pray for a decree finding defendants liable for breach of trust and liable for the failure to have the second deed of trust released and that the defendants be required to furnish security in the amount of the unpaid second deed of trust and the same declared a lien against the Barton County property.

The defendants filed answer and counterclaim. The counterclaim has been disposed of. The answer alleges (1) that the petition of the plaintiffs should be dismissed for the reason that the same does not state a claim upon which relief may be granted, and, (2) a plea of general denial.

By agreement the cause is here submitted on the original transcript filed in a former appeal, decided by this court in Collier v. Smith, 292 S.W.2d 627. The trial court having re-entered the same judgment as entered in the former appeal, it is stipulated that this court consider such transcript, exhibits and briefs on the issues here involved.

Two assignments of error are relied upon by defendants for reversal.

"I. The court erred in failing to sustain the defendants' motion to dismiss and motion for judgment at the conclusion of the plaintiffs' testimony.

"II. The court erred in declaring an equitable lien against defendant Smiths'

property in Missouri on a money judgment for breach of a Texas contract."

The evidence, briefly stated, is as follows: Mrs. Bertha Crider purchased the Alma Plaza Courts located at Alma, Arkansas, from Peter Goldwas on which there was a mortgage. In addition to assuming the first mortgage on this property, Mrs. Crider executed and delivered to Goldwas her promissory note for $12,261.11, secured by a second deed of trust on the property purchased, dated March 22, 1952. This note and deed of trust were offered in evidence. On December 31, 1952, defendants entered into a contract with Mrs. Bertha Crider to trade equities in properties owned by the defendants, known as the Centennial Courts and the Alma Plaza Courts owned by Mrs. Crider. At the time of the exchange of said properties there were outstanding liens against the Centennial Courts in the form of two deeds of trust and outstanding liens against the Alma Plaza Courts in the nature of a first and second deed of trust; the second deed of trust being held by Goldwas. In this agreement for the exchange of properties the parties agreed that defendants deposit their deed to the Centennial Courts, transferring the same to Mrs. Crider, with the First National Bank of Gainesville, Texas, as escrow agent. Under the provisions of this escrow agreement, the agent was to hold such deed and not deliver to Mrs. Crider until she paid off the second lien in the approximate sum of $10,500 on the Alma Plaza Courts. (The escrow agreement is in evidence.)

Having taken title to the Alma Plaza Courts (subject to two liens) the defendants thereafter, to-wit, on May 6, 1953, entered into a real estate contract with plaintiffs, by the terms of which plaintiffs traded a 160 acre farm in Barton County (subject to two deeds of trust) and 155 acre farm on Bull Shoals Lake (free of liens) to defendants in exchange for the Alma Plaza Courts, and the assignment to plaintiffs of all the rights, title and interest of defendants to the escrow agreement, which was done on May 9, 1953.

While plaintiffs were taking possession of the Alma Plaza Courts, May 26, 1953, a representative of Mrs. Crider called over long distance from Texas and talked to both plaintiffs and defendants concerning satisfaction of the second mortgage on the Alma Plaza Courts and the release to Mrs. Crider of the deed to the Centennial Courts at the time held under the escrow agreement, by the escrow agent, at the bank in Gainesville, Texas.

Defendants testified that plaintiffs told them "to go to Texas and release that escrow" and when defendants asked "for written authority to release those papers down there," plaintiffs said "it wasn't necessary".

Plaintiffs' testimony was to the effect that they were willing for defendants to release the deed held in escrow only when Mrs. Crider paid the second deed of trust in full. That they never at any time consented that the escrow agreement be satisfied without a compliance by paying off the second deed of trust.

Defendants testified that on the following day after the telephone conversation, they went to Gainesville, Texas, and to the Centennial Courts, where they met Mrs. Bertha Crider, and, together with Mrs. Crider went to the office of Mr. Self at Denton, Texas, about twenty miles from Gainesville. They testified that Mrs. Crider was on a trade or transaction to sell the Centennial Courts and that the transaction was about to be completed. Mr. Smith gave this testimony:

"Q. * * * I will ask you whether you learned that Mrs. Crider was prepared to close a real estate transaction concerning the Centennial Courts? A. Yes."

He stated: "We signed a release of the escrow agreement to be paid off the next morning. They didn't have the money in hand that evening. We signed the re-

lease and they was to go to the bank the next morning and pay it off."

He stated he went back to Gainesville but did not go to the bank of Gainesville at all. He admitted he found out later that the bank had released the deed under the escrow agreement and that Mrs. Crider had paid only a portion of it and that the time had been extended for payment of the remainder.

The escrow agreement is in evidence and there is no dispute as to its contents. Defendants testified they took the escrow agreement as security against the unpaid balance on the second mortgage on the Alma Plaza Courts and that they had assigned and transferred their interest to plaintiffs.

The evidence is undisputed that the escrow agent was never informed as to the transfer of the interest of defendants in such agreement to plaintiffs.

On or about June 1st the holder of the second mortgage, Mr. Goldwas, went to Gainesville, Texas, at the request of Mrs. Crider, and was paid $5,000 on the second deed of trust, which, at that time, had due on it $11,021.25. Mr. Goldwas testified that at the request of Mrs. Crider he extended the date of payment on such note; that on August 10, 1953, she paid $100, on September 11, 1953, $50, and, on October 24, 1953, $50, which was the last payment received by him, and there was still due, principal and interest $6,713.90.

The promissory note and mortgage are in evidence as plaintiffs' exhibits 7 and 8, and they show that the note is past due.

This witness testified, when asked about Mrs. Crider's agreement to pay the balance of the note: "No. She agreed to pay me that until she could get the rest of it. There was no set date."

It is admitted that the property sold to Mrs. Crider by Goldwas included an extra house and lot at Alma, which was not included in the sale made to plaintiffs. The evidence shows the value of this property was between $5,000 and $8,000 and covered by the second mortgage.

Plaintiffs' evidence shows that they executed a warranty deed September 26, 1953, but not delivered until November 2, 1953, conveying the Alma Plaza Courts to J. J. McBride and Estella McBride, and, at the time of the sale of such property, the McBrides were accepting the escrow agreement just as plaintiffs had accepted it but, when plaintiffs and the McBrides learned on September 26, 1953, that the escrow agreement had been released, the McBrides refused to take an assignment of the escrow agreement, as subsequently embodied in an instrument dated September 29, 1954, plaintiffs agreed to stand good for any second mortgage on the Alma Plaza Courts. However, this deed to the McBrides was a straight warranty deed and no mention was made to any encumbrance thereof.

No demand had been made by the McBrides upon plaintiffs to satisfy the second deed of trust on their property and there has been no attempt to foreclose the second mortgage. Plaintiffs have suffered no actual loss excepting expenses incurred by their unsuccessful efforts to induce payment, by Mrs. Crider or defendants, of the balance on the note secured by the second mortgage.

In our opinion we will refer to the appellants as defendants and to the respondents as plaintiffs, the position they occupied in the lower court.

■ The office of the pleadings is to define and to isolate the issues to those controverted so as to advise the trial court and the parties of the issues to be tried and to expedite the trial of the case on the merits. Linders v. Linders, 356 Mo. 852, 204 S.W.2d 229, 230; Gerber v. Schutte Inv. Co., 354 Mo. 1246, 194 S.W.2d 25, 27; Herbert v. Herbert, Mo.App. 272 S.W. 2d 705.

Section 509.050 RSMo 1949, V.A.M.S. provides: "A pleading which sets forth a claim for relief, * * * shall contain a short and plain statement of the facts showing that the pleader is entitled to relief, and a demand for judgment for the relief to which he deems himself entitled. If a recovery of money be demanded, the amount shall be stated. Relief in the alternative or of several different types may be demanded."

Section 509.110 RSMo 1949, V.A.M.S. provides: "A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one count * * * or in separate counts * * *. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as he has whether based on legal or on equitable grounds or on both." Goldman v. Ashbrook, Mo.App., 262 S.W.2d 165.

It is the defendants' contention that the trial court erred in failing to sustain their motion for judgment at the close of plaintiffs' case.

It is plaintiffs' contention that the petition stated a cause of action both at law and equity and that the evidence was sufficient to sustain the trial court's judgment.

Plaintiffs' evidence failed to support the pleaded action at law in that no damages were shown to have been sustained.

In 30 C.J.S. Escrows § 11, p. 1213, the law is stated:

"Where property deposited in escrow is disposed of without compliance with the conditions of the deposit, the depositor is "entitled to recover such damages as he may suffer through the depositary's unwarranted act, and where the grantee or obligee participates in the wrongful delivery he also may be liable; but recovery must be limited to the damages actually at-tributable to the wrongful delivery." Longworth v. Farmers' and Traders' Bank of Warsaw, 222 Mo.App. 1, 300 S.W. 546, 548; Rosenfield v. White, Tex.Civ.App. 1954, 267 S.W.2d 596; Lebrecht v. United Rys. Co. of St. Louis, Mo.Sup., 237 S.W. 112, 114(2).

The trial court properly considered this case as an action in equity. His findings that the defendants wrongfully induced the escrow agent to deliver to Crider the deed to the Centennial Courts and thereby deprived the plaintiffs of the security afforded by such escrow deed for the unpaid balance of a promissory note executed by Bertha Crider to Peter Goldwas and secured by a second deed of trust against the Alma Plaza Courts for $12,261.11, is fully sustained by the evidence. His findings that there was at the time of the trial an unpaid balance of principal and interest due in the sum of $6,713.90 is likewise correct.

The evidence conclusively shows that the defendants retained the deed to the Centennial Courts in Texas as security by placing it in escrow until Mrs. Crider paid off the note and satisfied the second deed of trust against the Alma Plaza Courts in Arkansas. Defendants assigned their rights to plaintiffs in exchange of the Alma Plaza Courts for plaintiffs' lands in Missouri. They received a valuable consideration for this security and by their wrongful acts in entering into a written release combined with the acts of Mrs. Crider in which they falsely represented to the escrow agent that the second deed of trust against the Alma Plaza Courts had been released, induced the surrender of this security, the deed to the Centennial Courts to Mrs. Crider, the grantee in said deed.

The legal effect of the defendants' acts, combined with the acts of Mrs. Crider in wrongfully and fraudulently inducing the escrow agent to release the deed to the Texas property, was that no title to the Texas property passed.

■ The escrow agreement in issue was a Texas contract and affected Texas real property. However, the laws of Missouri are in accord with the Texas laws, that is, that where the escrow agent is induced by fraud to surrender a title to real estate in breach of the terms of such escrow agreement, no title passes. Steffian v. Milmo Nat. Bank, 69 Tex. 513, 6 S.W. 823.

In the Steffian case, 6 S.W. on page 824, the court stated:

" * * * It is elementary law that the delivery of a deed is requisite to its validity as a conveyance. To take effect, it is quite as necessary that it should be delivered as that it should be signed. To complete a delivery in its legal sense, two elements are also essential. The instrument must not only be placed within the control of the grantee, but this must be done by the grantor with the intention that it shall become operative as a conveyance. It follows from these first principles that an instrument which passes into the possession of the grantee, without such intention on part of the grantor, is wholly inoperative; and that a purchaser from the former acquires in law no title to the property which it purports to convey. It is accordingly held that even a vendee from the grantee, who has paid value without knowledge of the facts, is not an innocent purchaser in such a case." (See authorities cited.)

This same law is declared in Binford v. Snyder, 144 Tex. 134, 189 S.W.2d 471. In this case the owner conveyed land to an agent for sale for cash and the agent breached the instructions by taking mining stock for the land and the subsequent transferee had knowledge of such breach, the court held that a trust resulted to the original owner and she retained equitable title as against the agent and subsequent transferee. On page 472 of 189 S.W.2d of the opinion, the court stated:

" 'It is a well settled general rule that if one person obtains the legal title to property, not only by fraud, or by violation of confidence of fiduciary relations, but in any other unconscientious manner, so that he cannot equitably retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and· legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it, and who is considered in equity as the beneficial owner.' * * *

" 'If the trustee transfers the trust property to a third person with the consent of the beneficiary, but the consent of the beneficiary was procured by fraud or other improper means, the trust will not be terminated.' "

It was held in Beaumont Car Works v. Beaumont Improv. Co., 4 Tex.Civ.App. 257, 23 S.W. 274, that the recording of a deed secured by improper delivery does not operate as a legal delivery.

In Nash v. Normandy State Bank, Mo. Sup., 201 S.W.2d 299, 301, the court held "An escrow holder is charged with the performance of an express trust governed by the escrow agreement with duties to perform for each of the parties which duties neither can forbid without the consent of the other." Marvel Industries v. Boatmen's Nat. Bank, 362 Mo. 8, 239 S.W.2d 346, 351 (3–4).

In Seibel v. Higham, 216 Mo. 121, 115 S.W. 987, the court held that one receiving a deed for delivery to the grantee on the performance of specified conditions is a trustee of an express trust, with duties to perform for the grantor and grantee which neither can forbid without the consent of the other. That where one receives a title without a compliance with the terms of the escrow agreement no title passes to the grantee. Bales v. Roberts, 189 Mo. 49, 87 S.W. 914.

In Goldman v. Ashbrook, Mo.App., 262 S.W.2d 165, 168, it was held:

"It would appear clear to the trial court in the instant case that if the plaintiff should be entitled, in his equitable action as

# 786

pleaded, to a judgment for the money loaned and an equitable lien on certain real estate of defendant to secure the same, that a mere judgment in his action at law for the money loaned would not afford the plaintiff complete and adequate relief. In fact there is no action at law conceivable that would adjudge in the plaintiff an equitable lien on real estate. 19 Am.Jur. page 151, § 163. Hence the court in this case, proceeding under the petition at hand and having jurisdiction of the subject matter and persons, properly undertook to try the case without a jury and as one in equity, subject to proof of the equitable features necessary to authorize a final disposition of the case as one in equity. Upon the proof of the plaintiff's right to an equitable lien, jurisdiction of the court to dispose of the case as one in equity was fully established. Krummenacher v. Western Auto Supply Co., supra [358 Mo. 757, 217 S.W.2d 473], same case in Mo.App., 206 S.W.2d 991.

■ "The equity jurisdiction of the court having attached under the pleadings and the proof, the court was authorized to dispose of both the legal and equitable aspects of the controversy and to do full and complete justice therein. Hallauer v. Lackey, 353 Mo. 1244, 1252, 188 S.W.2d 30. No right of the plaintiffs to a trial by jury was violated."

■ The defendants state in their argument: "The very heart of the error committed by the trial Court was in awarding damages when no actual damages were either pleaded or proved. The petition of the plaintiffs did not allege that they had been called upon to pay out any moneys, nor did they allege that their grantees, the Mc-Brides, had suffered any loss or damage. For that reason the petition of plaintiffs should have been dismissed, and certainly so after the conclusion of the proof where the plaintiffs' uncontradicted proof was that the plaintiffs had not been called upon to pay the mortgage by either the holder of the mortgage, Mr. Golwas, or by the Mc-Brides, the plaintiffs' grantees."

We find that the trial court's judgment was too broad. The evidence did not warrant the money judgment awarded. The only loss sustained under the evidence by the plaintiffs was the security afforded by the deed in escrow. Under the pleadings and evidence the court is not fully informed of sufficient facts to determine whether that security was lost.

The trial court did not follow the allegations of plaintiffs' petition as to equitable relief. The petition, in part, stated: "In such event plaintiffs are entitled to relief in equity and defendants should be required to furnish security for the payment of the balance of said second deed of trust."

We think the allegations in the petition for equitable relief do not properly plead features necessary to authorize a final disposition of the case as one in equity. There is nothing in the pleadings to show whether Mrs. Crider has disposed of the property described in the escrow deed; there is no pleading as to the value of this security, if any. The evidence in the case shows that this escrow deed reserved as security, had two existing deeds of trust against it. The evidence is not clear as to the liability on the second deed of trust on the Alma Plaza Courts for which the escrow deed was reserved as security. The pleading is not clear as to whether Mrs. Crider had knowledge of plaintiffs' interest under the assigned escrow agreement at the time of the release.

This court is of the opinion that the cause should be retried; that plaintiffs should be permitted to amend their petition to fully plead their equitable rights.

Reversed and remanded.

STONE, P. J., concurs.

RUARK, J., not sitting.