**SOUTHERN CROSS LUMBER &
MILLWORK COMPANY,
Plaintiff–Respondent,**

**v.**

**James B. BECKER,
Defendant–Appellant.**

No. 54326.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 29, 1988.

Robert E. Jones, St. Louis, for defendant-appellant.

David V. Collignon, Clayton, for plaintiff-respondent.

GRIMM, Presiding Judge.

In this bench-tried case, James Becker, d/b/a Becker Escrow Service, appeals from a judgment entered in favor of plaintiff Southern Cross Lumber and Millwork Company for damages resulting from a breach of fiduciary duty. We affirm.

There are three allegations of error. First, that the trial court erred in overruling Becker's motion to dismiss because Southern's cause of action was barred by the five-year statute of limitations, § 516.120, RSMo 1986. We disagree, because Southern filed its suit within five years after its damages were capable of ascertainment. Second, that the trial court

erred in determining that Becker owed a duty to Southern not to deliver Southern's mechanic's lien waiver without first disbursing full payment to Southern. We disagree, because Becker, as escrow agent, had a duty not to release the lien waiver unless Southern received payment.

The third and final allegation is that the trial court erred in determining that Becker was indebted to Southern in the amount of $7,432.92 because Southern clearly acknowledged, by delivery of its lien waiver to Becker on March 27, 1981, that it was paid in full. We disagree, because there was sufficient evidence for the trial court to find that Southern had not actually received payment.

A review of the facts in the light most favorable to the verdict reveals that, beginning in 1980, Southern provided materials to David Guthrel Development Company for improvements on several lots. The lot involved here was lot 4, Oak Post Lane in Chesterfield. Lumber and materials valued at $15,026.78 were sent to lot 4.

Guthrel had a construction loan for this lot from South Side National Bank. The bank required that funds be disbursed through an escrow agency, here James Becker, d/b/a Becker Escrow Services. Becker's procedures, according to his manager, are the same as those "used by every escrow disbursing company in the city."

Pursuant to the escrow agreement, Guthrel, after receiving materials from Southern, was to send Southern a signed voucher indicating the amount to be paid Southern. Southern then must send the voucher, along with a statement of account and an executed lien waiver, to Becker. Becker then was to process the voucher. If sufficient funds were available, Becker countersigned the voucher, making it negotiable. The voucher was then to be sent back to Southern to endorse and deposit like a check.

After the above procedure was followed, on January 14, 1981, Southern received $7,593.86. On March 27, 1981, Southern received a voucher from Guthrel for $7,432.92; the remaining balance due. Southern, on the same day, sent Guthrel's

voucher to Becker, along with a statement of account and a signed lien waiver, for $7,432.92.

After not receiving payment of the $7,432.92, Southern filed a mechanic's lien and petition to enforce the lien. On December 9, 1985, a circuit court found that Southern was not entitled to a mechanic's lien because of Southern's signed lien waiver dated March 27, 1981. On January 21, 1987, Southern filed its petition against Becker for breach of fiduciary duty.

■ Becker first alleges that the trial court erred in overruling his motion to dismiss because Southern's cause of action was barred by the five-year statute of limitations, § 516.120, RSMo 1986.

Becker argues that the applicable statute of limitations began to run on either March 28, 1981, (when he allegedly wrongfully delivered Southern's lien waiver to Guthrel) or on March 28, 1981, if not earlier (when he failed to pay Southern fully for the materials delivered). He claims that Southern's suit had to be brought by March 28, 1986, pursuant to the five-year statute of limitations, § 516.120, RSMo 1986. Thus, Southern's suit filed January 21, 1987, was untimely and consequently, barred.

Southern, on the other hand, contends that the statute of limitations did not begin to run until December 9, 1985. This is the date when Southern's signed lien waiver was used in circuit court to defeat its claim for a mechanic's lien. Thus, according to Southern, its suit was brought within five years, as § 516.120, RSMo 1986 requires.

Section 516.100 provides in pertinent part:

Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, ....

■ Thus, § 516.100 requires that the resulting damage be "capable of ascertainment" before the applicable statute of limitations, here § 516.120, begins to run. "Capable of ascertainment" refers to the fact of damage rather than the precise amount. *Title Insurance Company of Minnesota v. Construction Escrow Service, Inc.*, 675 S.W.2d 881, 885 (Mo.App.E.D.1984). It has been consistently held that the time under the statute of limitations begins to run only after the right to bring and prosecute a suit to a successful conclusion has arisen. *Id.* at 887; *Beckers–Behrens–Gist Lumber Company v. Adams*, 311 S.W.2d 70, 74 (Mo.App.E.D.1958). It does not necessarily begin to run when the liability is created. *Construction Escrow Service, Inc.* at 887.

From the evidence, we conclude that Southern did not actually sustain damage which was "capable of ascertainment" until December 9, 1985, when its lien waiver was used to defeat its claim for a mechanic's lien. The liability arose when Becker breached his duty and wrongfully released the lien waiver without first countersigning the voucher so Southern could be paid. However, the cause of action against Becker did not accrue until December 9, 1985, when Southern's damage was actually sustained and able to be ascertained. The statute of limitations, then, did not begin to run until December 9, 1985.

We find further support for denying this point. It has long been the rule that the burden of establishing the defense of statue of limitations is upon the party who relies on it. Section 516.100, Note 23, V.A. M.S. Although the evidence indicates that Southern gave the lien waiver to Becker on March 27, 1981, Becker produced no evidence as to when he released the lien waiver. All that is known is that it was presented by South Side National Bank in a court proceeding on December 9, 1985. Thus, Becker's statute of limitations defense fails for lack of proof.

The trial court correctly held that Southern's suit was not barred since the suit was brought within the applicable time period. Point denied.

Becker's next point is that the trial court erred in determining that he "owed a duty to [Southern] not to deliver [Southern's] mechanic's lien waiver without disbursing to [Southern] the full payment as specified in the lien waiver." He contends that an escrow agent cannot be charged with such a duty.

Becker misconstrues the ruling of the trial court. The duty, which Becker breached, was the release of the lien waiver from his control without fulfilling the corresponding duty to countersign the voucher. If Becker could not countersign the voucher due to a lack of sufficient construction funds, he had no duty to do so. In such a situation, however, he had a duty not to release the signed lien waiver.

▮ An escrow agent is charged with the performance of an express trust governed by the escrow agreement with duties to perform for each of the parties, which neither can forbid without the other's consent. *Nash v. Normandy State Bank*, 201 S.W.2d 299, 301 (Mo.Div. 1 1947). When a person acts as the depository in escrow, the person is absolutely bound by the terms and conditions of the deposit and charged with a strict execution of the duties voluntarily assumed. *Marvel Industries, Inc. v. Boatmens' Nat. Bank of St. Louis*, 362 Mo. 8, 239 S.W.2d 346, 351 (Div. 1 1951).

▮ Further, a fiduciary relationship is created by the escrow agreement. *Eastern Atlantic Transportation and Mechanical Engineering, Inc. v. Dingman*, 727 S.W.2d 418, 423 (Mo.App.W.D.1987). An escrow agent's failure to strictly follow the terms of the escrow agreement is a breach of his fiduciary duty. The breach of such duty constitutes a tort. *Id.*

▮ Becker breached his fiduciary duty to Southern when he did not comply with a term of the escrow agreement; he released Southern's signed lien waiver before Southern was actually paid. Point denied.

▮ Becker's final point is that the trial court erred in determining that he was indebted to Southern in the amount of $7,432.92 because Southern clearly acknowledged, by delivery of its lien waiver to him on March 27, 1981, that it was paid in full.

In determining the sufficiency of the evidence, we must consider the evidence most favorable to the plaintiff and give to that evidence the benefit of any favorable inferences which may be reasonably drawn therefrom, while at the same time, we disregard any contradictory evidence. *Southgate Bank and Trust Co. v. May*, 696 S.W.2d 515, 519 (Mo.App.W.D.1985).

Here, Southern's vice-president and treasurer testified that Southern was not paid the $7,432.92 due it. That officer also stated that he never received a countersigned voucher after he submitted the requisite lien waiver. Although Becker contends that Southern's lien waiver indicates Southern was paid, Becker's manager testified that he did not know if Southern was actually paid.

The judge in a bench-tried case can believe all, part, or none of the testimony of a witness, and on appeal we must give due regard to the opportunity of the trial court to have judged the credibility of the witnesses. *Id.;* Rule 73.01(c).

There was sufficient evidence for the trial judge to find that Southern had not been paid $7,432.92. Southern was entitled to recover damages it sustained as a result of Becker's unwarranted act. *See Collier v. Smith*, 308 S.W.2d 779, 784 (Mo.App.S.D. 1958). Point denied.

The judgment is affirmed.

GARY M. GAERTNER and KAROHL, JJ., concur.