_____

No. 95-1012

_____

In re: Leroy J. Lauer,                    *
                                          *
            Debtor                        *
                                          *
_____             *
                                          *
E. Bruce Nangle; Cele Nangle,             *
Guardian of the Estate of                 *
Timothy Nangle; Stephen J.                *
Nangle, Guardian of the Estate            *
of Ellen Nangle; Harriet                  *
Nangle-Rose,                              *  Appeal from the United States
                                          *  District Court for the
            Appellants,                   *  Eastern District of Missouri.
                                          *
      v.                                  *
                                          *
Leroy J. Lauer; Mark Twain                *
Bank, N.A., a National Banking            *
Association,                              *
                                          *
            Appellees.                    *
_____             *
                                          *
A. Thomas Dewoskin; James S.              *
Cole,                                     *
                                          *
            Trustees.                     *


_____

Submitted: September 11, 1995

Filed: October 18, 1996
_____

Before FAGG, Circuit Judge, HENLEY, Senior Circuit Judge, and MAGILL,
      Circuit Judge.

_____

HENLEY, Senior Circuit Judge.

E. Bruce Nangle filed this adversary bankruptcy proceeding on behalf of himself and others (collectively, Nangle)[1] against Leroy J. Lauer (Lauer) and Mark Twain Bank (Mark Twain)[2] to prevent the discharge in bankruptcy of certain claims against Lauer, for compensatory and punitive damages against Mark Twain, and for other relief. The United States Bankruptcy Court granted summary judgment for Mark Twain Bank. Nangle appealed the order of the bankruptcy court to the United States District Court which affirmed. Nangle then filed a timely appeal to this court pursuant to 28 U.S.C. § 158(d). We affirm in part, reverse in part, and remand for further proceedings.

## BACKGROUND

This bankruptcy proceeding is but one part of the litigation among these parties dating back to 1983 and arising from their participation in a real estate partnership. Plaintiff/appellant Nangle and others were limited partners in a Missouri limited partnership named Crossroads U.S.A. Limited II (Crossroads). Defendant/appellee Lauer and Joseph Graves were the general partners of Crossroads. The principal assets of the partnership

---

[1]In their brief, appellees contend that E. Bruce Nangle lacks standing to pursue this action and was dismissed from the case by order of the bankruptcy court. Appellees do not, however, state the basis for their challenge to Nangle's standing nor do they offer any explanation of said order of the bankruptcy court. Appellants do not address the issue in their brief. Because of this incomplete record and because we remand on other grounds for further proceedings, we leave for consideration by the bankruptcy court the question of whether Nangle has standing.

[2]The adversary complaint in bankruptcy asserts claims against two separately incorporated sister banks: Mark Twain Bank, N.A., of St. Charles County and Mark Twain Bank, N.A., of Big Bend Boulevard. The complaint alleges that each bank separately, and both of them together, violated the Uniform Fiduciaries Law of Missouri. The two banks have been represented by one counsel on this appeal. In this opinion for convenience we sometimes refer to Mark Twain Bank generally as including both branch banks and at other points we refer to the separate sister banks where the conduct of one or the other but not both appears to be implicated.

-2-

were two interests in real estate: the Riverheights Retirement Center in Booneville, Missouri and a 32 acre parcel of land near Wentzville, Missouri.

In 1982, general partners Lauer and Graves solicited Nangle and the other limited partners to sell their limited partnership interests to the general partners. The contracts for sale of the partnership interests contained guarantees of payment by the general partners secured by the general partners' own interests in Crossroads and representations that the condition of the assets of the partnership had not changed. Transfer of the partnership interests to Lauer and Graves was completed in November of 1982.

Approximately six months later, general partner Graves died. The former limited partners learned at the time of Graves' death that -- contrary to the representations made by Lauer and Graves in the contracts to buy out the interests of the limited partners -- general partners Lauer and Graves had previously sold the Riverheights Retirement Center property in return for an interest in an industrial development bond.

In March 1983, the former limited partners filed suit in Missouri state court against Lauer and the representative of Graves' estate. The complaint was later amended to add claims against Mark Twain Bank of St. Charles and Mark Twain Bank of Big Bend which had provided a total of three loans: (1) a loan by Mark Twain (St. Charles) to the Crossroads Partnership, allegedly secured by partnership assets (the March 1981 loan); (2) a loan by Mark Twain (St. Charles) to finance the general partners' purchase of the limited partners' interests, allegedly secured by partnership assets (the November 1982 loan); and (3) a loan by Mark Twain (Big Bend) to Lauer personally, allegedly secured by partnership assets (the December 1985 loan).

In November 1986, Lauer filed a voluntary petition for

-3-

personal bankruptcy and reported the state court lawsuit as one of the claims against the bankruptcy estate. In order to prevent the discharge in bankruptcy of their claim against Lauer, plaintiffs filed in the bankruptcy court a complaint to hold the debt nondischargeable.

The complaint alleged that the limited partners were induced to sell their interests to the general partners based on misrepresentations concerning the status of the assets of the limited partnership, including the retirement center property. Plaintiffs alleged in the complaint that they would not have sold their limited partnership interests if they had known that the Riverheights property had been sold in exchange for the industrial revenue bond from which earnings were tax free.

The complaint also alleged that Lauer and Graves had improperly used partnership assets to secure the personal loan they obtained from Mark Twain to finance the buy out of the limited partners. The complaint further alleged that Mark Twain Bank violated Missouri law by granting the loan to the general partners and taking a security interest in partnership property for the personal loan. According to the complaint, the actions of the general partners were in contravention of the terms of the limited partnership agreement and thus a breach of the general partners' fiduciary obligations. By lending money to Lauer and Graves, knowing that they were breaching fiduciary duties owed to the limited partners, the complaint asserted that Mark Twain Bank violated the Uniform Fiduciaries Law of Missouri. Three counts of the complaint for nondischarge in bankruptcy (Counts II, III and IV) named Mark Twain and are the subject of the present appeal.[3]

---

[3]The complaint in bankruptcy contained four counts: (1) Count I against defendant Lauer requested, under the bankruptcy code, nondischarge of plaintiffs' claim against Lauer on grounds that he fraudulently and in violation of his fiduciary duties sold partnership assets, misrepresented partnership assets and pledged partnership assets for personal loans; (2) Count II alleged that Mark Twain had violated the Missouri Uniform Fiduciaries Law by dealing with Lauer with actual knowledge that he was violating his fiduciary duties; (3) Count III alleged that Mark Twain had violated the Missouri Uniform Fiduciaries Law by obtaining partnership assets in bad faith; and (4) Count IV alleged that

The bankruptcy complaint requested the following relief: nondischarge in bankruptcy of the debt of Lauer to plaintiffs, compensatory and punitive damages against Mark Twain,[4] avoidance of Mark Twain's security interest, an injunction against Mark Twain's enforcement of its security interest, and relief under Section 548 of the Bankruptcy Code regarding voidable preferences.

## PROCEEDINGS BELOW

Mark Twain Bank first moved to dismiss the counts of the complaint against Mark Twain, but the bankruptcy court overruled the motion. After discovery, Mark Twain moved for summary judgment on Counts II, III and IV of the complaint. The bankruptcy court granted the motion for summary judgment in March, 1989. The bankruptcy court ruled that Count II was barred by the statute of limitations; Count III failed to state a claim for relief; and plaintiffs lacked standing to sue on the issues presented in Count IV.

Plaintiffs appealed the order of the bankruptcy court to the United States District Court as provided in 28 U.S.C. § 158(a). In October 1994, the district court affirmed the grant of summary judgment for Mark Twain. Nangle then brought this appeal from the order of the district court pursuant to 28 U.S.C. § 158(d).

because Mark Twain obtained security interests in partnership assets in violation of Missouri law the bankruptcy court should, under the bankruptcy code, void the transfer of such interests to Mark Twain

[4]The complaint in bankruptcy alleged that plaintiffs' actual damages exceeded half a million dollars.

**STANDARD OF REVIEW**

On a motion for summary judgment, the bankruptcy court views the evidence, and inferences from the evidence, in the light most favorable to the non-moving party. Matushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Summary judgment is granted only if there is no dispute as to any issue of material fact and if the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(c); Fed. R. Bkr. P. 7056.

On appeal of the bankruptcy court's judgment to the district court, the district court acts as an appellate court and reviews the bankruptcy court's legal determinations de novo and findings of fact for clear error. Rine & Rine Auctioneers, Inc. v. Douglas County Bank & Trust Co., 74 F.3d 854, 857 (8th Cir. 1996); Wegner v. Grunewaldt, 821 F.2d 1317, 1320 (8th Cir. 1987). Thus, when reviewing a grant of summary judgment by the bankruptcy court, the district court must determine de novo whether the moving party was entitled to judgment as a matter of law. In re Euerle Farms, Inc., 861 F.2d 1089, 1090 (8th Cir. 1988).

As the second court of appellate review, we conduct an independent review of the bankruptcy court's judgment and apply the same legal standards as the district court. Affeldt v. Westbrooke Condominium Assoc., 60 F.3d 1292, 1294 (8th Cir. 1995). We must determine whether there were disputed issues of material fact and whether Mark Twain was entitled to judgment as a matter of law. Southern Technical College, Inc. v. Hood, 89 F.3d 1381, 1383 (8th Cir. 1996).

The issues raised by this appeal all concern matters of law rather than fact. In general, the parties have not presented substantial disputes over matters of fact but rather have contested what legal conclusion should follow from the unchallenged facts. The bankruptcy court granted summary judgment for Mark Twain on

each of three counts of the complaint on grounds that Mark Twain was entitled to judgment as a matter of law.

**APPLICABLE LAW**

In this contested bankruptcy matter, the validity of the plaintiffs' claim for nondischarge in bankruptcy is determined by state law and the federal bankruptcy code. Because all relevant events occurred in Missouri, the bankruptcy and district courts based their rulings on Missouri law. We agree that Missouri law is applicable. As required by the Supreme Court, we review the lower courts' determinations of state law de novo. Salve Regina College v. Russell, 499 U.S. 225, 231 (1991).

The three counts of the complaint involving Mark Twain Bank asserted the following violations of law. Count II alleged that Mark Twain Bank (St. Charles) violated the Missouri codification of the Uniform Fiduciaries Law (sometimes "UFL"), Mo. Rev. Stat. §§ 456.240 to 456.350, through the bank's actual knowledge that Lauer and Graves were violating their fiduciary duties to the limited partners by misrepresenting the condition of the assets of the partnership.

Count III alleged that Mark Twain Bank (Big Bend) violated the Missouri Uniform Fiduciaries Law by making the December 1985 loan to Lauer and taking a security interest in partnership assets as collateral. Count III also alleged that this loan was an act in furtherance of an agreement between Lauer and the two Mark Twain Banks to obtain that collateral for less than its market value. Count III contended that this constituted bad faith by Mark Twain.

Count IV alleged that by financing the buyout by Lauer and Graves of the limited partnership interests and by taking a pledge of partnership assets as collateral Mark Twain Bank obtained property of the partnership in violation of the Uniform Fiduciaries Law. Count IV asserted that this transfer of property to Mark

-7-

Twain should be voided by the court under Section 548 of the Bankruptcy Code, 11 U.S.C. § 548, providing that certain pre-bankruptcy transfers are voidable.

Before going further it may be helpful to note briefly the basic premises of the Uniform Fiduciaries Law. This statute is the Missouri codification of the Uniform Fiduciaries Act, promulgated by the Commissioners on Uniform State Laws and adopted by more than 25 states. The Uniform Fiduciaries Law modifies the common law with respect to the duties of parties who deal with fiduciaries. Trenton Trust Co. v. Western Sur. Co., 599 S.W.2d 481, 490 (Mo. 1980). In particular, the UFL relieves banks of their common law duty of inquiring into the propriety of each transaction conducted by a fiduciary. Id. The UFL provides that banks and others who typically deal with fiduciaries may not be held liable for a fiduciary's breach of duty absent either (1) "actual knowledge" of the breach or (2) knowledge of sufficient facts to constitute "bad faith."[5] Id. at 491-92. See also Cassel v. Mercantile Trust Co., 393 S.W.2d 433, 440-42 (Mo. 1965) ("[A] suit of this nature must have as its basis bad faith or actual knowledge on the part of the bank.") (emphasis in original).

**COUNT II**

The first of the three counts of the complaint asserting claims against Mark Twain (Count II of the complaint) provided in

---

[5]The Missouri Uniform Fiduciaries Law does not define bad faith. It does, however, define good faith: "A thing is done in good faith . . . when it is in fact done honestly, whether it be done negligently or not." Mo. Rev. Stat. § 456.240. Missouri courts have held by reference to this statutory definition of good faith that "bad faith" means "dishonestly and not merely negligently" or in a "commercially unjustifiable" manner. See, e.g., General Ins. Co. of America v. Commerce Bank of St. Charles, 505 S.W.2d 454, 457-58 (Mo. App. 1974) ("Evil motive is not the gauge; it is whether it is 'commercially unjustifiable for the [bank] to disregard or refuse to learn facts readily available.'").

relevant part:

> That at all times herein mentioned § 456.240 - 350 R.S.Mo. 1978 as amended was in full force and effect entitled "Uniform Fiduciary [sic] Law".
>
> The documents of the partnership agreement in possession of the bank [Mark Twain Bank N.A. of St. Charles County] at the time of the [November 1982] loan, together with the written statement of the general partners on the loan application that the loan was to buy out the other partners, the further knowledge that the I.D.A. Bond was recently issued, together with the bank's prior knowledge that the partnership was so cash short as to be required to sell . . . a one-half interest in the pledged real estate, all of the above alone and in culmination [sic] give the bank actual knowledge of the breach of the fiduciary obligation of the general partners.

In Count II, plaintiffs alleged that Mark Twain Bank had violated its obligations under the Uniform Fiduciaries Law by lending money to Lauer and Graves and taking partnership assets as collateral with actual knowledge that Lauer and Graves were breaching fiduciary duties owed to the Crossroads' limited partners.

a. <u>Mo. Rev. Stat. § 456.630 Limitations Period</u>.

The bankruptcy court, without written explanation, denied Mark Twain's motion to dismiss Count II of the complaint for failure to state a claim for relief under Section 456.260 of the Missouri Uniform Fiduciaries Law, Mo. Rev. Stat. §§ 456.240 - 456.350. However, the court concluded that the claim was barred by a two- year statute of limitations found in Mo. Rev. Stat. § 456.630. We believe this ruling rested on a misinterpretation of Missouri law regarding the Uniform Fiduciaries Law claims and the applicable limitations period.

The bankruptcy court found that the plaintiffs were aware of the alleged wrongdoing by Lauer and Graves by at least March 1983, but did not file suit against Mark Twain Bank until November 1986.

The court then concluded that the applicable statute of limitations could be found in Section 456.630. The court further concluded that under Section 456.630 in order to be timely the claim against Mark Twain Bank had to be brought within two years of discovery of the breach of fiduciary duty. Thus, the action against Mark Twain would have had to be filed no later than March 1985. Because it was filed after this date it was time barred.

Finding no clear error with respect to the bankruptcy court's factual findings, we accept the bankruptcy court's conclusions as to the date the plaintiffs were charged with discovery of the claim and the later date when suit was actually filed. See Wegner, 821 F.2d at 1320 (on appeal from a grant of summary judgment we review the bankruptcy court's findings of fact for clear error). However, we believe that the bankruptcy and district courts erred in concluding that the statute of limitations applicable to the claim in Count II is the two-year period derived from § 456.630.

Section 456.630 is not part of the Uniform Fiduciaries Law as adopted by Missouri. Mo. Rev. Stat. § 456.350 ("Sections 456.240 to 456.350 may be cited as the 'Uniform Fiduciaries Law.'"). Section 456.630 is, however, codified as part of Missouri Revised Statutes Chapter 456, entitled Trusts and Trustees, of which the Uniform Fiduciaries Law is also part. Mo. Rev. Stat. §§ 456.010-456.820, Trusts and Trustees. Section 456.630 is included in a portion of Chapter 456 addressing the powers, duties and liabilities of trustees. Mo. Rev. Stat. §§ 456.500-456.670, Trustees' Powers, Duties and Liabilities.

Section 456.630 provides, in full, as follows:

456.630 **Effect of fraud and evasion**

Whenever <u>fraud</u> has been perpetrated in connection with any proceeding under this chapter or if fraud is used to avoid or circumvent the provisions or purposes of this chapter, any person injured thereby <u>may obtain</u>

appropriate relief against the perpetrator of the fraud, including restitution from any person, other than a bona fide purchaser, benefitting from the fraud, whether innocent or not. Any such proceeding must be commenced within two years after the discovery of the fraud but no proceeding may be brought against one not a perpetrator of the fraud later than ten years after the time of commission of the fraud.  This section has no bearing on remedies relating to fraud practiced on a settlor during his lifetime which affects the validity of a trust or succession to its assets.

Mo. Rev. Stat. § 456.630 (emphasis added).  Thus, by its terms, the key to Section 456.630 is fraud: suits under Chapter 456 for fraud must be brought within two years of discovery.

The courts below found, and the appellees here urge, that Section 456.630 is the applicable limitations period because Count II of plaintiffs' complaint against Mark Twain sounds in fraud.  Appellees contend that the essence of Count II is that Mark Twain obtained its security interest in partnership assets by participating in a fraudulent scheme with Lauer and Graves.  We respectfully disagree with this characterization.

As the quotation above from Count II of the complaint illustrates, it does not assert a claim for common law or other fraud.  Indeed the word fraud is never used in Count II.  Instead, Count II fairly clearly asserts that Mark Twain violated the Missouri Uniform Fiduciaries Law.  In particular, it alleges facts which, if proved, would establish that Mark Twain loaned money to Lauer and Graves with "actual knowledge" that Lauer and Graves were breaching fiduciary duties owed to Nangle and the other Crossroads limited partners.

Contrary to appellees' contentions in their brief and at oral argument, a violation of the Uniform Fiduciaries Law does not rest upon an assertion of fraud.  General Ins. Co. of America v. Commerce Bank of St. Charles, 505 S.W.2d 454, 456-58 (Mo. App.

-11-

1974).  All that is required is that the plaintiff prove either that the bank dealt with the fiduciary with actual knowledge of the fiduciary's wrongdoing or, lacking actual knowledge, that the bank's actions amounted to bad faith.  Southern Agency Co. v. Hampton Bank of St. Louis, 452 S.W.2d 100, 104-06 (Mo. 1970).  As drafted by plaintiffs, Count II asserts a violation of the Uniform Fiduciaries Law on a theory of "actual knowledge" by the bank.[6]

Appellees have artfully attempted to support their claim that the charges against them are ones of fraud, by mixing appellants' claims against Lauer in Count I with the claims against Mark Twain in Counts II and III.  But this effort is without merit.

Count I of the bankruptcy complaint does allege, in part, that Lauer and Graves acted fraudulently and thereby breached their fiduciary duties to their limited partners.  However, Count I pertains only to the plaintiffs' claims against Lauer and is not at issue on this appeal.

Count II recites, as it must, the actions of Lauer, the fiduciary, in order to state a claim against Mark Twain under the Uniform Fiduciaries Law.  However, Count II specifically does not allege fraud against Mark Twain.  Tracking the language of the

---

[6]In their brief on appeal, appellants at one point suggest that Count II also states a claim under the UFL against Mark Twain (St. Charles) for bad faith.  There is case law in Missouri holding that the language of a complaint for violation of the UFL should be read liberally and that a claim for bad faith may be made out without using the words "bad faith."  See Western Cas. & Sur. Co. v. First State Bank of Bonne Terre, 390 S.W.2d 913, 922 (Mo. App. 1965) (plaintiff made out a claim for bad faith under the UFL by pleading the essential facts even without using the words bad faith).  Because the issue of whether Count II states a claim for relief against Mark Twain under the UFL on the theory of bad faith (in addition to the claim for relief on the theory of actual knowledge which we have found is stated) has not been addressed by the courts below, we will defer judgment on this issue to the bankruptcy court in the first instance.

-12-

Uniform Fiduciaries Law and the Missouri cases interpreting it, Count II alleges facts which, if proved, would establish the Bank's actual knowledge that Lauer and Graves were breaching their fiduciary duties and therefore the Bank's liability to those harmed by the breach.

Appellees also attempt to bolster their argument that the claim must be one of fraud by pointing to matters outside the four corners of the complaint itself. This attempt is also unavailing. Appellees contend, for example, that Count II must sound in fraud because appellants would not have been allowed to join in the bankruptcy proceeding absent an allegation of fraud. However, the bankruptcy code sections cited by appellees, Section 523 (dealing with exceptions to discharge of debts) and Section 548 (dealing with voidable preferences) both speak to fraud or false representations, etc. committed by the debtor, not by a third party such as Mark Twain. It is true that plaintiffs contended that Mark Twain should also be joined in the adversary proceeding. However, the plaintiffs' contention that the actions of Mark Twain were necessary for Lauer to succeed in his alleged fraud are not inconsistent with plaintiffs' claims under the UFL against Mark Twain. Moreover, our careful review of the pleadings shows that plaintiffs/appellants have consistently argued in the bankruptcy and district courts as well as before this court that their claims against Mark Twain were ones of actual knowledge and bad faith as required by the UFL but not ones of fraud.

There is no case from the Missouri courts directly on point on the question of what statute of limitations applies to a violation of the Missouri Uniform Fiduciaries Law. However, we believe that our conclusion that a claim under the Uniform Fiduciaries Law is not a claim of fraud is supported by all the leading Missouri cases, Trenton, 599 S.W.2d at 491-93; Southern Agency, 452 S.W.2d at 104-06; Cassel, 393 S.W.2d at 440-42, as well as cases from other jurisdictions. See, e.g., Appley v. West, 832 F.2d 1021,

1030-31 (7th Cir. 1987) (interpreting Illinois codification of Uniform Fiduciaries Act). Therefore, we are confident that our decision that the limitations period in Section 456.630 does not apply here is fully consistent with the Missouri statutory scheme as it has been interpreted by its courts.

  b. Mo. Rev. Stat. § 516.120 Limitations Period.

  Having concluded that Section 456.630 is not applicable, we must determine what statute of limitations applies. We agree with appellants that under the Missouri scheme the most directly relevant statute of limitations is that in Section 516.120. Section 516.120 provides that in the absence of a more narrowly tailored limitations period, any action pursuant to a Missouri statute must be commenced within five years. Mo. Rev. Stat. 516.120(2). Section 516.120 also provides for a five year limitations period for any action on a claim for personal property or any other injury to a person or his rights. Mo. Rev. Stat. § 516.120(4).

  Section 516.120 has been applied by Missouri courts to very similar claims in other cases. For example, in Lehnig v. Bornhop, 859 S.W.2d 271 (Mo. App. 1993), investors in a limited partnership sued the general partner and an attorney alleging, inter alia, breach of fiduciary duty. The trial court dismissed the action as barred by the five year statute of limitations in Section 516.120. The Missouri Court of Appeals agreed that Section 516.120 applied to the breach of fiduciary duty claim but reversed and remanded on grounds that the statute had not run. See also Lehnig v. Bornhop, 896 S.W.2d 714 (Mo. App. 1995) (reaffirming that five year statute of limitations applied); Vogel v. A. G. Edwards & Sons, Inc., 801 S.W.2d 746 (Mo. App. 1990) (claim that broker breached fiduciary duty to clients governed by five year statute of limitations in Section 516.120); Southern Cross Lumber & Millwork Co. v. Becker, 761 S.W.2d 269 (Mo. App. 1988) (claim that escrow agency breached fiduciary duty in disbursing funds governed by five year

limitations period in Section 516.120).

In addition, our own court has recently applied the Section 516.120 limitations period to a claim of breach of fiduciary duty. In <u>Koester v. American Republic Investments, Inc.</u>, 11 F.3d 818 (8th Cir. 1993), limited partners in a real estate partnership sued the general partners for breach of fiduciary duty. We specifically held that a claim of breach of fiduciary duty was not "grounded in fraud" and that the applicable limitations period was five years as set forth in Section 516.120. <u>Id.</u> at 821-22.

As noted above, we assume that the bankruptcy court correctly concluded that the alleged wrongdoing of Lauer and Nangle occurred in approximately November 1982, that the wrongdoing was discovered in approximately March 1983, and that the claims against Mark Twain were first brought in approximately November 1986. Applying the five year statute of limitations, we conclude that plaintiffs' allegations against Mark Twain in Count II were timely.[7]

    c. <u>Elements of a Claim for Relief under the Missouri Uniform Fiduciaries Law</u>.

Having concluded that Count II was not time barred, we also expressly affirm the bankruptcy court's ruling that Count II of the plaintiffs' complaint in bankruptcy did state a claim for relief under the Uniform Fiduciaries Law. The elements of a cause of action under that statute are: (1) the defendant dealt with one who was a fiduciary; (2) the fiduciary breached his fiduciary duty; and (3) the defendant had either actual knowledge of the breach or knew sufficient facts to amount to bad faith. <u>General Ins. Co.</u>, 505

---

[7]Appellants argued on this appeal that even if their claims would otherwise be time barred the limitations period was tolled as to those plaintiffs who were minors when the action was initiated. Because we have determined that the claims were not time barred as to any of the plaintiffs we need not consider whether any tolling is provided by Missouri law or would apply on these facts.

S.W.2d at 456-58.

In determining whether the complaint stated a claim for relief we view the allegations in the complaint in the light most favorable to the plaintiff. In such light, we believe that the allegations of Count II, if proved, would establish a claim under the Act.

The complaint alleged that Lauer was a general partner of Crossroads with fiduciary duties to the limited partners including Nangle. The complaint also alleged that Mark Twain dealt with Lauer in several ways, especially lending money to Lauer that was secured by assets of the partnership rather than of Lauer. Finally, the complaint alleged facts which, if proved, would show that Mark Twain had actual knowledge of Lauer's breach of fiduciary duty. In particular, the complaint alleged that Mark Twain had a copy of the partnership agreement which specifically forbade the general partners to pledge partnership assets for personal uses. In addition, the complaint alleged that Mark Twain knew that the contracts for purchase by Lauer and Graves of the limited partners' interests misrepresented the assets of the partnership because Mark Twain knew that the Riverheights Center had been sold for the industrial revenue bond.

Under the Missouri caselaw, these allegations, along with the rest of the complaint, were sufficient to state a claim for relief under the UFL. See Metro Trust Co. v. Northwestern Savings & Loan Assoc., 654 S.W.2d 631 (Mo. App. 1983) (judgment for bank reversed because plaintiff had made out claim that bank had actual knowledge that fiduciary with whom bank dealt was breaching her fiduciary duty); Western Cas. & Sur. v. First State Bank of Bonne Terre, 390 S.W.2d 913 (Mo. App. 1965) (judgment for bank reversed where bank had actual knowledge that fiduciary breached his fiduciary duty). See also Penalosa Cooperative Exchange v. A.S. Polonyi Co., 745 F. Supp. 580 (W.D. Mo. 1990) (complaint was sufficient to state claim

for relief that defendant had actual knowledge of fiduciary's breach of duty); <u>O'Neal v. Southwest Missouri Bank of Carthage</u>, 168 B.R. 941 (Bankr. W.D. Mo. 1994) (bank was liable under Uniform Fiduciaries Law when it acted with actual knowledge that fiduciary's behavior was breach of fiduciary duty).

We hold that in Count II of their complaint the appellants have stated a claim for relief under Missouri law that is not time barred.

**COUNT III**

Count III, provided, in relevant part:

> The [December 1985] loan of the Mark Twain Bank of Big Bend. . . is an act in furtherance of an agreement between the defendant's banks and the debtor to permit the bank to seize the collateral of said loans for a fractional amount of its value and is "bad faith" as the same is stated in § 456.240 R.S. Mo. 1978, as amended.

Thus, Count III asserted that Mark Twain Bank of Big Bend (a sister bank of Mark Twain Bank of St. Charles County) lent further funds to Lauer in December 1985 also secured by assets of the partnership, including the industrial revenue bond and the Wentzville real estate. Count III further asserts that Mark Twain Bank of Big Bend lent these funds pursuant to an agreement among Mark Twain of St. Charles, Mark Twain of Big Bend and Lauer, the purpose of which was to allow the banks to seize the collateral for the loans to the detriment of the appellants when Lauer defaulted.

The bankruptcy and district courts concluded that Count III did not state a claim for relief against Mark Twain Bank. We respectfully disagree.

The theory of Count III is fairly clear that Mark Twain Bank[8] violated the Uniform Fiduciaries Law by certain actions taken in bad faith. As with Count II above, we believe that -- although the drafting of the complaint is not perfect -- it adequately alleges facts, which if true, state a claim for relief. If Nangle can prove Lauer did misrepresent the assets of the partnership in breach of a fiduciary duty to the limited partners, if the banks did lend money to Lauer, and if the banks lent the money to Lauer believing he could not repay but that they could seize the pledged assets -- alleged to be assets of the partnership -- for less than their fair value, we believe that Nangle has established a claim of bad faith under the Missouri Uniform Fiduciaries Law.

Appellants having pleaded facts which, if proved, would entitle them to relief, the lower courts' judgment of dismissal on appellants' claim in Count III was in error.

**COUNT IV**

Count IV, provided, in relevant part:

The actions of the defendant Mark Twain Bank of St. Charles, N.A. was [sic] in violation of the Uniform Fiduciary [sic] Law of the State of Missouri as more fully set forth above; that the same was done and performed by the defendant bank with the knowledge and understanding that the effect of their loan posture with

---

[8]Count III clearly states a claim for relief based on bad faith under the UFL against Mark Twain (Big Bend). It is less clear whether Count III also makes out a claim for bad faith against Mark Twain (St. Charles). Although focused on actions of Mark Twain (Big Bend), Count III does incorporate by reference the recitation in Count II of actions allegedly taken by Mark Twain (St. Charles). Count III also alleges that there was an agreement between the two branches of Mark Twain and Lauer to permit the two banks to seize the collateral for the loans (alleged to be partnership assets) for less than their value and that the various actions of Mark Twain (St. Charles) and Mark Twain (Big Bend) were taken pursuant to this agreement. Because the bankruptcy court did not rule on this issue and the parties have not addressed it, we defer judgment on this matter to the bankruptcy court in the first instance.

-18-

the debtor would be to deprive the plaintiffs of their security interest in the assets of the partnership as pledged to said bank . . . .

That as a result . . . the Court should void the transfer of property made by the partnership to said defendant bank as authorized by 11 U.S.C. § 548.

In this Count, appellants sought to void the transfer of partnership property to Mark Twain Bank under Section 548 of the Bankruptcy Code. Section 548 provides that certain pre-bankruptcy transfers are voidable if made with intent to hinder, delay or defraud or if made in exchange for less than reasonable value. 11 U.S.C. § 548.

The bankruptcy court entered judgment for Mark Twain on Count IV on the ground that the appellants lacked standing to bring a claim under § 548. We agree that the appellants lacked standing to assert this claim and accordingly affirm.

Section 548 by its terms provides that certain transfers by the debtor prior to bankruptcy may be voided only by "the trustee." 11 U.S.C. § 548(a). Absent evidence that the trustee cannot be relied upon to assert such claims, claims to avoid preferential transfers may not be brought by creditors. The courts in this circuit have consistently followed this rule and have held that individual creditors of the bankruptcy estate do not have standing to assert claims of voidable transfers. See, e.g., In re Minnesota Alpha Foundation, 122 B.R. 89 (Bankr. D. Minn. 1990); In re Auxano, Inc., 87 B.R. 72 (Bankr. W.D. Mo. 1988).

Because plaintiffs alleged no facts to support an inference that the bankruptcy trustee was unable or unwilling to pursue claims on behalf of the estate, they had no standing to bring a claim under Section 548. Thus, we affirm the judgment of the lower courts on behalf of defendants on Count IV of the complaint.

In sum, we hold that: (1) the bankruptcy court erred as a matter of law in holding that Count II was barred by the statute of limitations; (2) the bankruptcy court erred as a matter of law in holding that Count III failed to state a claim for relief; and (3) the bankruptcy court correctly granted judgment for defendants on Count IV on grounds that the plaintiffs lacked standing.

Accordingly the judgment of the district court affirming the decision of the bankruptcy court is reversed as to Counts II and III and affirmed as to Count IV. The case is hereby returned to the district court with instructions to remand to the bankruptcy court for further proceedings not inconsistent with this opinion.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.