**RIVERMONT VILLAGE, INC.,**
**Plaintiff–Respondent,**

v.

**PREFERRED LAND TITLE, INC.,**
**Defendant–Appellant.**

**No. SD 31254.**

Missouri Court of Appeals,
Southern District,
Division One.

May 15, 2012.

Motion for Rehearing and Transfer
Denied June 5, 2012.

Application for Transfer
Denied Aug. 14, 2012.

Lawrence G. Gillespie, Gillespie, Hetlage & Coughlin, L.L.C., Clayton, MO, for Appellant.

Shannon Wright Morgan, Pelts, McMullan, Edgington & Morgan, L.L.P., Kennett, MO, for Respondent.

GARY W. LYNCH, Judge.

Preferred Land Title, Inc. ("Title Company"), appeals the judgment awarding $100,000 plus interest to Rivermont Village, Inc. ("Seller"), as a result of Title Company's breach of fiduciary duty to Seller. Title Company claims that the trial court misapplied the law, in that Title Company did not breach any fiduciary duty to Seller because there was no substantial evidence supporting that any funds due to Seller were actually received by Title Company. Finding no merit in Title Company's argument, we affirm.

### Factual and Procedural Background

We view the facts in the light most favorable to the judgment. *Southern Cross Lumber & Millwork Co. v. Becker,* 761 S.W.2d 269, 270 (Mo.App.1988). Moreover, as neither party requested specific findings of fact, the trial court was not required to include any findings of fact in its judgment, and any fact issues not expressly found by the trial court "shall be considered as having been found in accordance with the result reached." Rule 73.01(c); *Hulshof v. Noranda Aluminum, Inc.,* 835 S.W.2d 411, 419 (Mo.App.1992). In that context, the following facts were adduced at trial.

During negotiations with Seller for the purchase of 4,700 acres of land in Washington County, Missouri, Thomas and Joe Flaherty, on behalf of Flaherty Realty ("Buyer") suggested that Title Company be used as the escrow agent for the potential transaction. Thereafter, on October 8, 2000, Seller, by its agent, Elton Dalton, entered into a purchase agreement ("Purchase Agreement") with Buyer that provided for a purchase price of $2.6 million for the land, with earnest money of $100,000 to be deposited with Title Company and placed by it into a trust account with Title Company as agent. The Pur-

chase Agreement further contained a provision wherein, if the sale of the property was not completed, the $100,000 earnest money deposit would be delivered to Seller as liquidated damages. Seller faxed a copy of the Purchase Agreement to Title Company on October 12, 2000. Thereafter, Wanda Brennecke, an employee of Title Company, represented to Seller through Dalton that Title Company would act as escrow agent on the transaction. No separate and express escrow agreement between Title Company, Seller, and Buyer, however, was ever executed because, according to Cara Detring, the then-president of Title Company, "[i]t's not the custom in this area to have an express escrow agreement with earnest money. It is in other areas, but not in this area. If you ask someone to do it, they'd think you're crazy, so it's not done."

Four days later, Joe Flaherty hand-delivered to Brennecke a personal check for $100,000 that contained the designation "Rivermont Earnest Money." While Joe Flaherty remained in her office, Brennecke then faxed to Dalton a copy of the check, along with a note stating that the earnest money check had closed. Dalton then contacted and inquired of Brennecke "about the check being deposited on that business day, and she said that it would go on that day's business, on that business day."

Shortly after leaving Brennecke's office, Joe Flaherty called Brennecke and told her not to deposit the check. Later that same day, at Brennecke's request, Flaherty delivered to her written instructions not to deposit the earnest money check until Buyer had completed its due diligence. After Flaherty's initial call, Brennecke chose not to inform Seller that the check would not be deposited as scheduled because she was waiting for written instructions from Flaherty; after receiving the written instructions, Brennecke still did not relay the information to Seller because she "got busy and didn't think of it again."

On November 7, 2000, Buyer requested that Title Company complete title work on the transaction. Two weeks later, on November 22, Dalton, on behalf of Seller, requested that Title Company begin title work on the property. He also entered into an agreement in Dunklin County to complete a Section 1031 tax exchange.[1] Closing on the Rivermont–Flaherty sale was scheduled for December 7, 2000. Meanwhile, also on November 22, Joe Flaherty contacted Title Company and cancelled the title work.

On December 1, 2000, Dalton called Brennecke to inquire about the status of the transaction. It was at that time that Brennecke first informed Dalton that the earnest money check had not been deposited at the request of Thomas and Joe Flaherty. Shortly thereafter, Seller's attorney sent a letter to Title Company stating that Seller expected that either the closing would occur on December 7 as scheduled or the $100,000 earnest money would be forwarded to Seller as liquidated damages; the letter also requested a copy of Buyer's written instructions not to deposit the check. Title Company's then-president, Cara Detring, responded with a letter denying that Title Company had any responsibility to Seller and stating that Title Company could not provide Seller with escrow services due to the conflicting instructions from the parties involved. Detring's letter further admitted the se-

---

1. In general, "a Section 1031 exchange permits the seller of certain types of property to defer taxation of any capital gain in the sale by reinvesting the sales proceeds in property of a like kind." *Vest v. Kansas City Homes, L.L.C.*, 288 S.W.3d 304, 308 n. 5 (Mo.App. 2009); *see* 26 U.S.C. § 1031.

quence of events described *supra,* including Brennecke receiving instructions from Buyer not to deposit the check and not passing those instructions on to Seller. Detring included a copy of Buyer's written instructions with the letter as requested.

When the closing did not occur as scheduled on December 7, Dalton tried to contact both Thomas and Joe Flaherty; neither returned his phone calls.

In May 2001, Seller contacted Title Company because Seller had a new buyer interested in the property and wanted Title Company to share with the new buyer the title information it had acquired during the initial transaction. In June 2001, Seller sold the entire property to the new buyer for $1.7 million.

Seller filed a petition in the circuit court of Washington County against Title Company on October 15, 2003, alleging a breach of Title Company's fiduciary duty to Seller (Count I) and negligence (Count II). Seller sought the $100,000 in liquidated damages, in addition to punitive damages and attorney fees. A change of venue brought the case to Bollinger County.

A bench trial was held on November 16, 2010. Thereafter, the trial court entered judgment in favor of Seller for $100,000 in liquidated damages, in accordance with the terms of the Purchase Agreement, plus interest from December 7, 2000, until paid in full. Following the denial of Title Company's motion to amend the judgment, Title Company appealed.

### Standard of Review

We follow the standard of review set forth in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976), i.e., we will affirm the trial court's judgment unless it is not supported by substantial evidence, it is

against the weight of the evidence, the trial court erroneously declares the law, or the trial court erroneously applies the law. *Id.* at 32. Pursuant to Rule 84.13(d),[2] we defer to the trial court's superior opportunity to determine the credibility of witnesses. *Strobl v. Lane,* 250 S.W.3d 843, 844 (Mo.App.2008). As such, the trial court is free to believe all, part, or none of the testimony of any witness. *Id.* at 845 (citing *Christian Health Care of Springfield West Park, Inc. v. Little,* 145 S.W.3d 44, 48 (Mo.App.2004)). Finally, we view the evidence and all reasonable inferences that can be drawn therefrom in the light most favorable to the judgment and disregard all evidence and inferences to the contrary. *Strobl,* 250 S.W.3d at 844; *Southern Cross Lumber & Millwork Co.,* 761 S.W.2d at 270.

### Discussion

In its sole point, Title Company claims that

> [t]he trial court erred in entering judgment in favor of Seller and against Title Company in the principal sum of one hundred thousand dollars plus interest for breach of fiduciary duty because such judgment was based upon a misapplication of the law and is unsupported by substantial evidence in that title company never had any actual funds come into its possession for which to serve as a fiduciary, Seller knew at the time of the sale contract, which it drafted, that the funds were still to be delivered, Seller was never informed that actual funds had come into Title Company's possession, and the property was thereafter sold by Seller to another party.

We disagree.

 As best we can discern Title

2. All rules references are to Missouri Court Rules (2011).

Company's point,[3] it claims that as a matter of law the only fiduciary duty it had to Seller in this transaction was that if it actually received any funds from Buyer, then it had the obligation to turn those funds over to Seller, but that the trial court's judgment is not supported by substantial evidence because there was no evidence that Title Company received any funds from Buyer. Because the legal premise of Title Company's point is not correct, its point has no merit.

The only Missouri authority cited by Title Company in support of its legal theory is *Green v. Huckstep*, 447 S.W.2d 297 (Mo.1969). *Green* involved a suit by an escrow agent against a buyer to recover on a check for an escrow down payment upon which the Buyer stopped payment. *Id.* at 298. The trial court entered judgment against the escrow agent denying any recovery. On appeal, our supreme court determined that the facts showed that the escrow agreement had been abandoned by both the seller and the buyer, and that therefore the escrow agent had no legal basis upon which to recover on the check. *Id.* at 299. In this respect, *Green* has no applicability to the case before us, where the trial court, in finding for the Seller, implicitly found that the escrow agreement had not been abandoned.

In another respect, however, *Green* is helpful in pointing out the flaw—paying Seller funds actually received was not the only fiduciary duty Title Company owed to Seller—in Title Company's point. In *Green*, the escrow instructions were contained in the contract for sale between the seller and the buyer, which the es-

crow agent purported to act under when he accepted the check for the down payment. *Id.* at 298. Although found to be subsequently abandoned, the court initially determined that "[p]laintiff's duties as escrow agent or 'trustee' were to both parties for the duration of the contract, and such were governed by the escrow agreement [referring to the contract for sale]." *Id.* at 299.

Here, Title Company received a copy of the Purchase Agreement containing escrow instructions and designating it as escrow agent for the transaction. Thereafter, Title Company informed Seller it would act as escrow agent. Four days later, Title Company accepted an earnest money check for $100,000 on the transaction. When it accepted that check, Title Company voluntarily assumed the position of escrow agent, as it had told Seller it would. This action created a fiduciary relationship between Seller and Title Company in accordance with the escrow instructions contained in the Purchase Agreement. *Id.*; *Southern Cross Lumber & Millwork Co.*, 761 S.W.2d at 272.

 The terms of the Purchase Agreement named Title Company as escrow agent and expressly provided that $100,000 earnest money was to be placed in a trust account by Title Company. That money would thereafter constitute liquidated damages for Seller in the event Buyer backed out of the transaction. Upon receipt of the earnest money check from Joe Flaherty, Title Company had the fiduciary duty to Seller, created by the express terms of the escrow instructions in the

**3.** Title Company's point does not comply with Rule 84.04(d)(1)(B), in that it fails to state concisely the legal reason for this claim of reversible error. "Deficient points preserve nothing for appellate review; however, we may choose to review them if the deficiency does not impede a disposition on the merits."

*Morgan v. State Farm Fire & Cas. Co.*, 344 S.W.3d 771,·776 (Mo.App.2011). Because we believe we are able to discern Title Company's legal reason from its point, argument, and further clarification during oral argument, we exercise our discretion and review the point on its merit.

Purchase Agreement, to deposit that check into a trust account. This duty was acknowledged by Title Company through Brennecke's statement to Seller that the check would be deposited that same business day. Any instructions to the contrary from Buyer—without Seller's consent—constituted an attempt to unilaterally change the terms of the escrow agreement. An escrow agent is strictly bound to perform the duties specified in an escrow agreement; neither party can alter the terms of an escrow agreement or forbid an escrow agent from performing his or her duties without the other party's consent. *Southern Cross Lumber & Millwork Co.*, 761 S.W.2d at 272. Therefore, Title Company owed Seller the fiduciary duty to either deposit the earnest money check into a trust account on that business day or obtain Seller's permission to alter the terms of the escrow agreement. Its admitted failure to do either constituted a breach of Title Company's fiduciary duty to Seller, and the trial court did not err in so finding. Title Company's point is denied.

### Decision

The trial court's judgment is affirmed.

BURRELL, P.J., and RAHMEYER, J., concur.